## OHIO UTILITIES COMPANY *v.* PUBLIC UTILITIES COMMISSION OF OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 210. Argued January 20, 21, 1925.—Decided March 2, 1925.

1. In determining the reproduction value of the plant of a public utility as a basis for fixing its rates, there should be a reasonable allowance for organization and other overhead charges that necessarily would be incurred in reproducing it; and the amount of such allowance is a matter of estimate not dependent on proof of actual expenditures originally made to defray such charges. P. 362.
2. An order of a state commission, affirmed by the state supreme court, fixed rates for an electric company allowing a return of less than 5% upon the value of its property, this result being reached by arbitrarily refusing any allowance for preliminary organization expenses, and by arbitrarily reducing allowances for interest during the construction period, working capital, value of buildings and plant equipment, and operating expenses, below the amounts established as reasonable by the undisputed evidence before the commission, *Held* that the return was so inadequate as to result in depriving the company of property without due process of law; and that the company was not accorded the sort of judicial inquiry to which under the decisions of this Court it was entitled. P. 361.

108 Ohio St. 143, reversed.

ERROR to a judgment of the Supreme Court of Ohio which affirmed an order of the Ohio Public Utilities Commission reducing the rates chargeable by the plaintiff in error for electricity.

*Mr. Timothy S. Hogan* and *Mr. J. C. Martin*, for plaintiff in error.

*Mr. John W. Bricker* and *Mr. Burch D. Huggins*, with whom *Mr. C. C. Crabbe*, Attorney General of Ohio, and *Mr. Granville Barrere* were on the brief, for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The Ohio Utilities Company is engaged in supplying gas and electricity for light, heat and power to' various communities in Ohio. In 1920 it filed with the Utilities Commission rate schedules for gas and electrical service in the Village of Hillsboro. The rates were protested and the commission ordered a hearing. Pending a decision, the company was allowed to collect the rates in accordance with its schedule upon condition that it would return to its customers any excess over the rates finally fixed, for the due performance of which it furnished a bond. After a hearing and rehearing, the commission reduced the electrical service rates set forth in the company's schedule, and fixed the same for residence and commercial lighting at twelve cents per kilowatt hour for the first two hundred hours per month and ten cents per kilowatt hour for all over two hundred hours, and for private garage automobile charging a minimum of one dollar per month net. As a basis for these rates, the commission found that the fair value of the physical property of the company used and useful in the furnishing of electrical service to consumers in Hillsboro was $138,521; to which allowances were added as follows: taxes during construction, $1,081; interest during construction, $1,500; to maintain an adequate stock of materials and supplies, $1,071; working capital for carrying on the electrical service in Hillsboro, $2,882;—bringing the value of the property, as of August 30, 1920, for rate making purposes, to the total sum of

$145,055. The commission further found that the reasonable operating expenses (including an allowance of $3,000 for taxes) in furnishing such electrical service for a period of one year should be $37,608, and a reasonable annual allowance for depreciation should be $7,252, (being five per centum of the value) making a total of $44,860. The commission then found that a reasonable return to the company for the period of one year would be $8,703, and estimated that the rates fixed would produce the aggregate of these two sums, namely, $53,563. Upon error to the state supreme court the order of the commission was affirmed. 108 Ohio State 143.

The order of the commission is assailed as confiscatory and, therefore, in contravention of the Fourteenth Amendment. The specific grounds of complaint in respect of the order, so far as necessary to be stated and considered, are as follows: (1) the value of the property should have been fixed at $154,655.93; (2) under the evidence, the allowance for operating expenses, including taxes, should have been at least $38,744.85; (3) the return to the company should have been on the basis of eight per cent. upon the value stated in (1), or $12,372 annually.

*Property valuation.* An examination of the record shows that the engineers of the commission made an itemized inventory and valuation of the company's property, based on reproduction value less depreciation, from which it appears that the aggregate fair value of the property for rate-making purposes was $154,655.93. This valuation was confirmed by the oral testimony of the engineers; it was acquiesced in by the company; and we find no substantial evidence in the record to the contrary. The commission accepted the valuation of its engineers in all respects except that it rejected or reduced the amount of the following items: preliminary organization expenses, $5,000, rejected outright; interest for one year's construction period, reduced from $4,507.98, as estimated and

recommended, to $1,500, a reduction of $3,007.98; working capital, being one-twelfth of the annual operating expenses and cost of coal for one month, reduced from $4,198.42 to $2,882, a reduction of $1,316.42. It also appears that the engineers' valuation of the buildings and plant equipment, $122,276.15, was carried into the commissioner's computation at the round sum of $122,000. The aggregate, therefore, of the rejections and reductions is $9,600.55.

The item of $5,000 seems to have been rejected upon the ground that there was no proof of actual expenditure. Reproduction value, however, is not a matter of outlay, but of estimate, and should include a reasonable allowance for organization and other overhead charges that necessarily would be incurred in reproducing the utility. In estimating what reasonably would be required for such purposes, proof of actual expenditures originally made, while it would be helpful, is not indispensable. The commission's chief engineer, explaining the appearance of the item in his report, called attention to the account system prescribed by the commission, which, among other things, provided that under the head of " organization " was included incorporation fees paid to the government and other fees and expenses incident to organizing the utility and placing it in readiness to do business, attorney's fees, cost of preparing and issuing certificates of stock, etc., etc., and testified that the item was an estimate made as the result of an investigation by the commission's engineer on the spot. There was no testimony to the contrary; and the company, in view of the concession, evidently deemed it unnecessary to produce evidence upon the point. That such expenditures in a substantial amount would necessarily be made in reproducing the utility is clear; it is not suggested that the estimate of the engineers is excessive or unfairly made; and the rejection of the entire amount cannot be regarded as otherwise than arbitrary.

The reduction of the item for interest seems to be of like character. The engineers' estimate was based upon their conclusion that it would require one year for the construction of the plant; and interest at six per cent. was allowed on the estimated cost for half of that period. There is no justification in the record, so far as we can see, for a reduction of the item to an amount which is less than one-third of the engineers' estimate.

The item for working capital was carefully worked out by the commission's own engineers; there was no evidence to the contrary; and the reduction seems to have been equally capricious.

The curtailment of the estimated value of the buildings and plant equipment by the sum of $276.15 finds no explanation in the record, and probably was a sacrifice to the easy convenience of round numbers.

*Operating expenses.* The commission's engineers reported and testified that the actual operating expenses for the year ending February 28, 1921, were $38,744.85,—to which should be added the amount of a reasonable depreciation allowance, fixed by the commission itself at $7,252. We are unable to find any evidence in the record which impeaches the accuracy of the sum of these expenses, or which casts doubt upon their fairness as a measure of the necessary annual operating expenses. Yet the commission reduced the amount to $37,608, a difference of $1,136.85. The commission found, it is true, that the plant had been inefficiently operated. But we find no evidence to this effect in the record and none has been called to our attention. To the contrary, the commission's engineer who examined the property and accounts of the company testified that he considered the expenditures of the company were reasonable and that the plant was efficiently and economically managed.

*Return.* As bearing upon the amount of return to which the company is entitled, a summary of the fore-

going may now be considered: value of property for rate-making purposes, $154,655.93; annual amount of income based upon rates fixed by commission, $53,563; operating expenses, together with amount of annual depreciation allowed by commission, $45,996.85; leaving a balance as return to the company of $7,566.15, or less than five per cent. upon the value of the property. That this is so plainly inadequate as to result in depriving the company of its property without due process of law may not be doubted. See *Bluefield Co. v. Pub. Serv. Comm.*, 262 U. S. 679, 692–695, and cases cited; *S. W. Tel. Co. v. Pub. Serv. Comm.*, 262 U. S. 276, 288.

From the foregoing, it is evident that the state supreme court did not accord to the plaintiff in error that sort of judicial inquiry to which under the decisions of this court it was entitled. *Bluefield Co. v. Pub. Serv. Comm., supra*, p. 689; *Ohio Valley Co. v. Ben Avon Borough*, 253 U. S. 287, 289.

> *Judgment reversed and cause remanded for further action not inconsistent with this opinion.*