By the Court.
 

 The correctness or otherwise of the finding of the commission that the rate as filed by the West Ohio Gas Company as of December 13, 1925, and upon hearing finally adopted by the Public Utilities Commission as a reasonable and a lawful rate, is in fact reasonable and lawful, depends upon the correctness or otherwise of including, as a rate-fixing basis, a proportion of the value of the transmission main between Mifflin township, Wyandot county, and the village of Celina, in the valuation of the property used and useful in supplying natural gas to the village of Celina.
 

 It is conceded by counsel for the village of Celina that for many years its exclusive source of supply of gas was through this transmission line; but it is contended that, since a new field has been discovered in the vicinity of the village of Celina,
 
 *600
 
 and gas is now being supplied to it by the West Ohio Gas Company, by purchase from the Ohio Public Service Company, largely from the new field, it' should be relieved from all the burden of the transmission line, which had theretofore been its only source of supply.
 

 That the Mifflin township transmission line is now and at all times has been in service to the village of Celina is conclusively shown by the record; but the necessity for its being continued in service for the village of Celina is seriously questioned by the evidence, which strongly tends to prove that, if all the variously owned wells in the new field were connected with a transmission line, and the gas therefrom conveyed to the village of Celina, more than a sufficient supply of gas could be supplied for the village from that field for the time being. The weight of the evidence, however, is to the effect that the new field has not the indications of being of such durability and dependability as to justify reliance upon it alone for a supply of gas for the village. True, the evidence upon the subject of the probable life of the new field necessarily was opinion evidence, by witnesses more or less qualified to testify as experts; but that character of evidence, being the best and only evidence practicably obtainable, is not without probative value. In our opinion, the weight of the evidence shows such an uncertainty as to the probable life and durability of the supply of gas in the new field as to warrant the conclusion that it is unwise at this time to abandon the service through the Mifflin township main, and, therefore, that the inclusion of the proper proportion of the
 
 *601
 
 value of that line as a rate-making basis was not error.
 

 The evidence also discloses that the West Ohio Gas Company is now equipped with a plant for the manufacture of artificial gas of a capacity sufficient to supply any deficiency which may occur in the natural gas supply, in the transmission of which to the village of Celina it will be necessary to use the Mifflin township transmission line.
 

 The evidence discloses such a wide divergence of opinion upon the subject of the reproduction value of both the transmission and distribution systems, that, were it not for the fact that the Public Utilities Commission through its own engineer made an independent valuation, it would have been very difficult for the commission, even with its superior knowledge of such subjects, to make a valuation in any way approximating accuracy, and impossible for this court to do so.
 

 The West Ohio Gas Company filed a detailed reproduction valuation of its distribution system in the village of Celina and of its transmission’system’ from the Mifflin township field to the village of Celina, and allocated to the village of Celina such proportion of the transmission system as the use of that line by the village of Célina bore to the whole use of the line by the various consumers along the line, a summary of which valuation is as follows:
 

 Final Summary.
 

 Reproduction Cost New as: .of January. 1, 1026.
 

 Jointly used property __________________________________________________ $293,588
 

 Land _____1_______________________________________________________________________ 476
 

 
 *602
 
 Buildings ________________________________________________________________________ 3,239
 

 Apparatus and contents 1________________________________________ 2,298
 

 Distribution system .......................... 134,133
 

 Total — Physical property ---------- $433,734
 

 Working capital _____________________________________________________________ 3,957
 

 Materials and supplies' ___________________________________________ 1,886
 

 Going value ___________________________________________ 19,120
 

 Subtotal _____________________________________________________________ $458,697
 

 Investment banker’s services ________________________________ 22,935
 

 Total _____________________1____________________________________________ $481,632
 

 The village of Celina did not make a detailed reproduction valuation, but contented itself with attempting to prove in a general way that the reproduction valuation of the West Ohio Gras Company was too high, and with attempting to prove that the present value of the two systems, by reason of the number of years each of them has been in service, is little or nothing, and especially that the distribution system, by reason of its having been originally of steel construction, is now substantially rusted away and is serviceable only by reason of the fact that the soil underlying the village is of such character as to reinforce the rusted out system, and but for that fact the mains would not retain gas at all.
 

 In this situation, the Public Utilities Commission, having made a valuation of its own through one of its engineers, and neither party having availed itself of the privilege of cross-examining such engineer
 
 (Lindsey
 
 v.
 
 Public Utilities Commission,
 
 111 Ohio St., 6, 144 N. E., 729), adopted that valuation. That valuation having been made by a disinterested person, a person of the commis
 
 *603
 
 sion’s selection, and that valuation having been neither as high as the valuation of the West Ohio Gas Company, nor as low as the valuation of the various citizens of the village of Celina, in so far as they attempted to make a valuation, we are of opinion that the commission was justified in its conclusion that the valuation of its own disinterested engineer carried more weight and probably more nearly expressed the true valuation than any of the other evidence upon the subject; that it was the character of evidence which carried to the minds of the members of the commission the greater conviction, and therefore overbalanced by its weight all other evidence.
 

 Upon the subject of depreciation, the engineer of the commission depreciated the distribution system approximately 27 per cent, and the jointly used property approximately 35 per cent. The evidence is not in dispute as to the fact that both systems have been in use many years, probably 38 years; but the evidence does disclose that both systems have been constantly in use and have been constantly repaired, so that much of the original construction has been replaced by new pipe. Having in mind the date of the original construction, and the probable extent of reconstruction, we are of opinion that the transmission line might well have been depreciated a greater per cent, from the new production value. Without determining the per cent, it should be depreciated, but for the purpose of computation only and for the purpose of determining whether the rates and charges are too high in any event, we will depreciate it 50 per cent., making that portion of the transmission
 
 *604
 
 line allocated to the village of Celina of the present value, for this computation for rate-making purposes, of $63,170.73.
 

 With reference to the distribution system, the village of Celina, through its counsel, makes no complaint of the valuation of the land at $400. It does complain of the valuation of the buildings at $2,678, and places the overvaluation at $1,000. For the purpose, therefore, of this computation only we will figure that valuation at $1,678. It complains that the item of apparatus and contents, valued at $2,073.65, is one-half too high. For the purpose of this computation we will figure that item at $1,036.82. It complains that the reproduction valuation of the distribution system at $75,-421.50 is $10,000 too high. F,or the purpose of this computation we will figure that valuation at $65,421.50. It complains that the depreciation to present value should be 75 per cent, instead of 27 per cent. We are of opinion that the depreciation of 27 per cent, was not sufficient, and, without determining the per cent, it should be depreciated, but for the purpose of this computation, we will figure the reconstruction value as found by the commission’s engineer, less $10,000, and then less 75 per cent., which leaves the present value at $16,355.37. It complains of an item of 18,742 feet of reserve mains, valued at $6,091.95. For the purpose of this computation we will subtract that sum from the present value of the distribution system, leaving the present value at $10,355.77.
 

 It complains of the items, “organization, interest, engineering, law expenditures, taxes and general expenses during construction, and contingencies and
 
 *605
 
 commissions, present value, $9,958.53; material and supplies, present value, $800; working capital, present value $2,566,” and contends that these items should be wholly eliminated.
 

 The Supreme Court of the United States, in the case of
 
 Ohio Utilities Co.
 
 v.
 
 Public Utilities Commission of Ohio,
 
 267 U. S., 359, 45 S. Ct., 259, 69 L. Ed., 656, reversed a judgment of this court eliminating similar items; and, since the record affords no basis upon which we could arrive at any other figures than the ones found by the commission’s engineer, we decline to guess upon the subject and will include them at the figures found by the commission, in this valuation.
 

 After the above reductions, there still remains a total valuation of the property used and useful in supplying gas to the village of Celina of $89,965.52. The Public Utilities Commission found that the rates and charges fixed by it would produce a net earning to the West Ohio Gas Company, per annum, of $7,219, which finding is fully supported by the record. That earning upon a valuation of $89,965.52 would be 8 per cent. plus.
 

 We therefore reach the conclusion that, since we do not feel justified in wholly eliminating the transmission line from the valuation, the schedule of rates and charges fixed by the Public Utilities Commission in any event is neither unlawful nor unreasonable, for the reason that, if we were to reduce the valuation in the respects and to the extent claimed by the village of Celina, the rates still would not permit the earning of more than a just and reasonable return upon the value so reduced of the property used and useful.
 

 
 *606
 
 We therefore affirm the order and finding of the commission fixing the rates as filed with it under date of December 13, 1925, as the just and reasonable rates.
 

 Order affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.