## CENTRAL KENTUCKY NATURAL GAS CO. v. CITY OF MT. STERLING, KY., et al.

District Court, E. D. Kentucky. October 3, 1928.

Allen, Botts & Duncan, of Lexington, Ky., and D. L. Hazelrigg, of Frankfort, Ky., for plaintiff.

Robt. H. Winn, of Mt. Sterling, Ky., for defendant.

ANDREW M. J. COCHRAN, District Judge. ■ This suit is before me on defendants' motion to dismiss the bill for want of jurisdiction. The relief sought is an injunction against the enforcement of an ordinance of the defendant city passed October 4, 1927, by its board of councilmen, providing that the plaintiff, which had a franchise to sell natural gas in the city, should sell and supply same to consumers at not exceeding 42 cents per thousand cubic feet, with a credit of 2 cents, if payment was made within ten days from the end of each month. There is no diversity of citizenship between the parties, and hence jurisdiction of the suit does not exist on this ground. The ground of jurisdiction relied on is that the suit presents a federal question. It is alleged in the bill that the ordinance deprives plaintiff of its property without due process of law, in violation of the Fourteenth Amendment, and further that it impairs the obligation of its contract rights under its franchise, in violation of section 10 of article 1 of the Federal Constitution. The main, if not sole, reliance is on the position that the ordinance violates the Fourteenth Amendment. It was enacted on the same day that the ordinance granting the franchise was enacted, but subsequent thereto. Ordinance had theretofore been enacted authorizing the offering of the franchise for sale, and the plaintiff had become the purchaser thereof at the sale so authorized. It was pursuant to such purchase that the ordinance granting the franchise was enacted. In disposing of the motion to dismiss note is to be taken of several of the provisions of the franchise under which plaintiff operates. By section 4, subsec. A, it was provided:

"The Company shall have the right to charge, demand and collect and receive for its gas service just and reasonable rates, charges and compensation."

By section 4, subsec. B, it was provided:

"As soon as lawfully may be after the sale of and acceptance of the bid, for this franchise, the said council, in pursuance of the authority upon it conferred by law, shall by ordinance duly adopted, fix just and reasonable rates, charges and compensation which may be charged and collected by the Company for its gas service hereinunder; and the City shall supply a copy of said ordinance to the Company."

It was pursuant to this provision of the franchise that the ordinance complained of was enacted. By section 4, subsec. C, it was provided:

"In the event the rates, charges and com-

pensation, fixed in said ordinance, shall, in the opinion of the company, be less than just and reasonable rates, charges and compensation for such gas service, the company, may, in an action instituted by it in a court of competent jurisdiction have tried out and determined whether the same are less than just and reasonable rates, charges and compensation. In such suit the burden of proof shall be upon the company. In such suit the City may assert that its legislative rates, charges and compensation are higher than just and reasonable rates, charges and compensation for such gas service. Upon the issues made in such action same shall proceed to a determination of just and reasonable rates, charges and compensation, higher or lower as the determination may be, than are the said legislative rates, charges and compensation. From such judgment either party may appeal in due course to any courts having lawful jurisdiction to consider such appeal."

And by section 4, subsec. E, it was provided:

"Pending the final determination of such controversy and the fixing of just and reasonable rates and charges, the company shall have the right to charge, receive and collect as temporary rates and charges not to exceed fifty ($.50) cents per (1,000) one thousand cubic feet of gas until the company is furnishing gas through a pipe line of sufficient capacity, or (should the purchaser hereof already have that ten-inch line named in Section 23) when it has the two pipe lines so connected as to supply natural gas in the distributing system of Mt. Sterling, Ky., as provided in Section 23 of this ordinance, and after it is furnishing gas through a pipe line of sufficient capacity, or (should the purchaser hereof already have that ten-inch line named in Section 23) then through two pipe lines as aforesaid, not to exceed sixty ($.60) cents per one thousand (1,000) cubic feet of gas; but provided that of the amount collected under such temporary rates the company shall under the direction and control of the court, impound ten ($.10) cent per one thousand (1,000) cubic feet until the final fixation of just and reasonable rates and charges as aforesaid. Upon final determination of just and reasonable rates and charges as aforesaid, the sums so impounded together with all interest accumulations thereon shall be distributed under the order of said court to the company, or to its several customers, or in part to each, as the final determination may direct. If the company during any part of the time prior to said final determination shall have collected sums including, or other than those impounded, in excess of the rates and charges as finally determined, it shall then and thereupon repay said excess sums to the several customers who may have made such payments. The company shall give to each customer a receipt for the amount paid by him pending the final determination of said suit or proceeding. It shall also keep an accurate record of all sums paid in by all and any of its customers under temporary rates and said record shall at all times be open to the city and to any customers as to his own contribution thereto; and the company on demand from the city, shall file with said court where said proceeding or suit may be pending a full and detailed statement of amounts, times and sums contributed by each customer to said funds. In addition to said temporary rates hereinabove provided for, the company shall have the right to charge three ($.03) cents per one thousand (1,000) cubic feet, if the bill for service is not paid within ten days (10) after said bill is mailed or delivered to the customer."

As stated, the ordinance complained of was enacted on the same day as, but subsequent to, the enactment of that granting the franchise. It provided no penalties for failure to comply with its requirements. It is evident that it was contemplated that such an ordinance should be enacted promptly after the granting of the franchise without hearing or investigation, and that, if the plaintiff was dissatisfied with the rates fixed by it, it could bring suit to enjoin the enforcement of the ordinance in which the reasonableness of the rates fixed could be determined after full hearing. To this end the modus vivendi pending the litigation was provided in subsection E of section 4. The plaintiff alleges that the rates fixed by the ordinance were unreasonable and confiscatory, and that therefore that ordinance deprives it of its property without due process of law, in violation of the Fourteenth Amendment. This is the federal question upon which it relies to sustain this court's jurisdiction of this suit. But it does not necessarily follow from the fact that the rates so prescribed are unreasonable and confiscatory that that ordinance so deprives plaintiff of its property. It may be that those rates are unreasonable and confiscatory, and yet the ordinance does not deprive plaintiff of its property without due process of law. To hold that it does is to ignore the provisions of the ordinance granting its franchise which contemplated and provided

that the board of councilmen of the defendant city should enact an ordinance prescribing rates and a certain course of procedure should be followed in case plaintiff deemed the rates so prescribed to be unreasonable and confiscatory and the fact that no penalties are prescribed for a failure to charge and collect the rates so prescribed. These provisions and this fact prevented the ordinance prescribing rates from amounting to a deprivation of plaintiff's property without due process of law. I do not understand that a prescription of rates, though unreasonable and confiscatory, to come within the inhibition of the Fourteenth Amendment, where provision is made for a judicial hearing and no penalties are prescribed for charging and collecting such rates pending such hearing. This is particularly so where, as here, jurisdiction is made for a modus vivendi pending such judicial hearing, of which no complaint is made, and to which plaintiff agreed in accepting the franchise. Such is the implication of a number of decisions of the Supreme Court of the United States.

The case of Chicago, M. & St. P. R. R. Co. v. Minnesota, 134 U. S. 418, 10 S. Ct. 462, 702, 33 L. Ed. 970, involved the validity of rates fixed by the Railroad Commission of Minnesota under a statute of that state. The Supreme Court thereof construed the statute to make the action of the commission final and conclusive, and to give no power to the courts to stay its hands if it established rates that were unreasonable. It was held that the statute and the action of the commission were unconstitutional. The court said:

"This being the construction of the statute by which we are bound in considering the present case, we are of opinion that, so construed, it conflicts with the constitution of the United States in the particulars complained of by the Railroad Company. It deprives the Company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a Railroad Commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice."

It is the implication of what is here said that, if the statute had not made the action of the Railroad Commission "an absolute finality," but had provided for a judicial hearing as to the reasonableness of the rates

fixed by it, neither its action nor the statute itself would have deprived the plaintiff of its property without due process of law.

The case of Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596, involved the validity of an order of the Corporation Commission of Oklahoma directing the Oklahoma Operating Company, engaged in the laundry business, not to increase its rates. Suit was brought by the company against the commission to enjoin it from prosecuting proceedings in contempt against it for violating the order charging higher rates. No provision was made for a judicial review of the order otherwise than in contempt proceedings, and the commission sitting as a court was empowered to impose a penalty therefor not exceeding $500 a day. It was held that the plaintiff was entitled to the injunction sought. The Supreme Court said:

"So it appears that the only judicial review of an order fixing rates possible under the laws of the state was that arising in proceedings to punish for contempt. The constitution endows the Commission with the powers of a court to enforce its orders by such proceedings. * * * Obviously a judicial review beset by such deterrents does not satisfy the constitutional requirements, even if otherwise adequate, and therefore the provisions of the acts relating to the enforcement of the rates by penalties are unconstitutional without regard to the question of the insufficiency of those rates."

The implication is that, if the legislation had provided for a judicial review of the order of the commission, and there had been no provision for the contempt proceedings for disobeying it, neither the order nor the legislation would have been invalid.

The case of Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, involved the validity of an order of the Public Service Commission of Pennsylvania fixing maximum future rates to be charged by the Ohio Valley Water Company. It was an appeal from the judgment of the Supreme Court of the state upholding the order complained of. The Supreme Court reversed the judgment of the state court. That court had construed the legislation under which the order was made "as withholding from the courts power to determine the question of confiscation according to their own independent judgment," and the Supreme Court was bound by this construction.

The Supreme Court said:

"The order here involved prescribed a complete schedule of maximum future rates

and was legislative in character. * * * In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, fourteenth amendment."

The implication is that, if the legislation had provided for such hearing, neither the order complained of nor it would have been invalid.

In case of Bluefield, W. W. & Improv. Co. v. Public Service Com., 262 U. S. 679, 43 S. Ct. 675, 67 L. Ed. 1176, there was involved an order of the Public Service Commission of West Virginia prescribing rates for the Bluefield Water Works & Improvement Company. It also was an appeal from the judgment of the Supreme Court of the state upholding the order complained of. And here also the Supreme Court reversed the judgment of the state court. Concerning that court's construction of the legislation under which the order complained of was made, it said:

"The state Supreme Court of Appeals holds that the valuing of the property of a public utility corporation and prescribing rates are purely legislative acts not subject to judicial review except in so far as may be necessary to determine whether such rates are void on constitutional or other grounds; and that findings of fact by the Commission based on evidence to support them will not be reviewed by the court."

The ground of its decision was thus stated:

"Plaintiff in error is entitled under the due process clause of the 14th amendment to the independent judgment of the court as to both law and facts."

The implication of this is that, if the legislation under which the order was made had provided for a judicial hearing as to the reasonableness of the rates, no question could have been made as to the validity of the legislation and the order made under it.

In each of these four cases the legislation complained of provided for a hearing before the commission, and such hearing was had. This hearing, however, did not save the order and legislation. What was fatal was the absence of a provision for judicial hearing. Had such judicial hearing been provided, the provision for a hearing before the commission would have been immaterial, just as in a case where rates are prescribed by the Legislature a hearing before it is not essential, if a proper judicial hearing is provided.

But these are not all the relevant decisions of the Supreme Court. Two involved legislation providing for a judicial hearing, and which, because of this, was upheld as not depriving of property without due process of law. In the case of Southern P. Co. v. Campbell, 230 U. S. 537, 33 S. Ct. 1027, 57 L. Ed. 1610, it was held that the procedure permitted by the Oregon Railroad Commission Act, under which the Railroad Commission may determine, upon hearing, that freight rates are unreasonable, excessive, and discriminatory and make orders for other rates which in its judgment are not open to such objection, does not deny due process of law, where the statute provides that suit may be brought in the state court to set aside orders of the commission upon the ground that the rates are unlawful. The court said:

"The provision of the statute that suit might be brought in the state court to set aside orders of the commission upon the ground that the rates fixed were unlawful, or that the regulation or practice prescribed was unreasonable, did not infringe the rights of the complainants. The procedure permitted by the statute is consistent with the Fourteenth Amendment."

The case of Detroit & M. Ry. Co. v. Fletcher Paper Co., 248 U. S. 30, 39 S. Ct. 13, 63 L. Ed. 107, was a suit by a party to recover the excess charged over and above the rate fixed by the Railroad Commission. It was held he could not recover. The court said:

"The only question properly before us is whether the statutes as construed run against the Fourteenth Amendment of the Constitution of the United States. It is argued that they do, if, as was held, they preclude an inquiry in these proceedings into the confiscatory character of the rates in present circumstances. But the defendant had had its chance to have the validity of the rates judicially determined in a suit for that purpose and had used it. * * * There is nothing to hinder a state from providing that after a judicial inquiry into the validity of such an order it shall be binding upon the parties until changed."

Here the ordinance complained of was enacted under, and in pursuance to, that granting plaintiff its franchise, which it had accepted, and to the terms of which it had agreed by such acceptance. That ordinance contemplated and provided that the board of councilmen of the defendant city should promptly enact an ordinance prescribing rates. It is true that it called for the prescription of reasonable rates. But the meaning was that the board should prescribe rates

which it deemed reasonable without hearing or investigation. The only hearing and investigation as to the reasonableness of the rates prescribed which it contemplated was that to be had in a suit brought by the plaintiff complaining of the prescription and seeking a hearing and investigation for which provision was made. Provision was further made for an injunction in such suit against the enforcement of the rates prescribed and for the collection of certain rates pending the determination of such suit, the excess above the rates prescribed to be impounded. To all this the plaintiff agreed by accepting the franchise. No penalty whatever was provided for collecting rates in excess of those prescribed.

 Question is made as to whether the board of councilmen of the defendant city had power to prescribe plaintiff's rates. Subsection B of section 4 provided for the fixing of rates by the city council "in pursuance of the authority conferred by law." The authority referred to is that conferred by subsection 36 of section 3490, Kentucky Statutes. This subsection was enacted by chapter 71 of the Acts of 1918 entitled "An act to amend section 3490, Kentucky Statutes, Carroll's Edition, 1915, being an act entitled 'An act to amend an act entitled "An act for the government of cities of the fourth class approved March 19, 1912," and being a part of charters of cities of the fourth class,' be and the same is amended by adding subsection 36 as follows."

It is claimed by the plaintiff that this act is in violation of section 51, state Constitution, in that it did not embody the already existing 35 subsections along with the new subsection No. 36, and hence that the board of councilmen of the defendant city had no power to enact the ordinance complained of. It is difficult to make out how this position, even if sound, aids plaintiff on the question of jurisdiction. The defendants contend, under the authority of the decision in the case of Louisville v. Cumberland T. & T. Co. (C. C. A.) 155 F. 725, 12 Ann. Cas. 500, that this is an additional reason for denying jurisdiction. Plaintiff quotes as against this decision that in the case of Dayton v. City Ry. Co. (C. C. A.) 16 F.(2d)

401. But, assuming this position to be relevant to the question in hand, I do not think that this act violates section 51, Kentucky Constitution. The decision in the case of Henderson Traction Co. v. City of Henderson, 178 Ky. 124, 198 S. W. 730 is directly in point against this position. Neither the point decided nor Judge Carroll's generalization of the previous decisions of the Kentucky Court of Appeals construing and applying this section in the case of Board of Penitentiary Commissioners v. Spencer, 159 Ky. 265, 166 S. W. 1017, relied on by plaintiff, supports it. But it is unimportant whether the board of councilmen of cities of the fourth class in this state have power generally to fix rates. They have power to grant franchises, and the power to grant a franchise includes the power to fix its terms, of which the rates to be charged may be one. As the rates to be charged could have been fixed in the franchise, so it would seem that the power to fix them by a subsequent ordinance reserved in the ordinance granting the franchise would be valid. Besides, it would seem that the plaintiff should be estopped to question the power to fix rates. Its franchise is built on the existence of such power.

I am therefore constrained to hold that the ordinance complained of, notwithstanding the rates prescribed may be unreasonable and confiscatory, does not deprive plaintiff of its property without due process of law, in violation of the Fourteenth Amendment, and hence that this court does not have jurisdiction of this suit on this ground.

 Nor can it be said that the ordinance impairs the obligation of plaintiff's franchise in violation of section 10 of article 1 of the Federal Constitution. That franchise contemplated and provided that the board of councilmen of the defendant should, promptly, after the granting of the franchise, enact an ordinance prescribing rates which it deemed reasonable without hearing or investigation on its part. What it did in enacting the ordinance was what was contemplated and provided for in the ordinance granting the franchise.

The motion to dismiss for want of jurisdiction is sustained.