**CENTRAL KENTUCKY NATURAL GAS CO. v. RAILROAD COMMISSION OF KENTUCKY et al.**

District Court, E. D. Kentucky. January 28, 1930.

D. L. Hazelrigg, of Frankfort, Ky., Chester J. Gerkin, of New York City, Allen, Botts & Duncan, of Lexington, Ky., and Ernst, Cassatt & Cottle, of Cincinnati, Ohio, for plaintiff.

Robert H. Winn, of Mt. Sterling, Ky., David C. Hunter, of Lexington, Ky., J. W. Cammack, Atty. Gen., and J. A. Edge, of Lexington, Ky., for defendants.

Before MOORMAN and HICKENLOOPER, Circuit Judges, and DAWSON, District Judge.

PER CURIAM. The plaintiff, a Kentucky corporation, is engaged in the sale and distribution of natural gas in the city of Lexington, Ky., under a franchise granted to it by the city on February 25, 1927, under the provisions of sections 163 and 164 of the Constitution of Kentucky. While the franchise goes into much detail as to the duties and obligations of the plaintiff in distributing and selling natural gas to consumers, it does not fix the rate to be charged for such service. Lexington, under the law of Kentucky, is a city of the second class. Charters of cities of the second class confer upon such cities no power to regulate the rates to be charged by public utilities furnishing service to their inhabitants. Chapter 61 of the Acts of the General Assembly of 1920 (now sections 201e–1 to 201e–26, Kentucky Statutes, Carroll's 1922 Edition), confers that power upon the Railroad Commission of Kentucky.

Section 4 of the franchise deals with the question of the rates to be charged by the

plaintiff under its franchise. That section reads as follows:

"Sec. 4. (A) The Company shall have the right to charge, demand, collect and receive for its gas service just and reasonable rates, charges or compensation.

"(B) The Company shall, within two (2) days after the effective date of the franchise contract promulgate in writing the rates, charges and compensation which it may deem to be just and reasonable and which it proposes to charge for its gas service, and shall on said day file a copy thereof with the Mayor of the City of Lexington and shall also, on said day, file a copy thereof, and a copy of this ordinance with the Railroad Commission for the State of Kentucky.

"(C) The Board hereby declares that any rate in excess of forty cents ($.40) per one thousand (1,000) cubic feet of gas would be in excess of a just and reasonable rate for such gas service, but this declaration shall not be binding on the Company, nor shall anything herein contained ever restrict the City from contending for a lower, nor the Company from contending for a higher, nor the Railroad Commission of the State of Kentucky or other tribunal in the exercise of a lawful jurisdiction, nor any court in the exercise of its jurisdiction, from fixing a lower or higher rate than forty cents ($.40) per one thousand (1,000) cubic feet of gas.

"(D) In the event the rates and charges promulgated and filed by the Company as aforesaid, shall, in the opinion of the City, be in excess of just and reasonable rates and charges then the City shall proceed before the Railroad Commission as provided in Sections 201e–1 to 201e–20 of the Kentucky Statutes, and in such proceeding the Company shall assume the burden of proving that the rates and charges promulgated by it as aforesaid, are just and reasonable.

"(E) Pending the final determination of such controversy and the fixing of just and reasonable rates and charges by said Railroad Commission and including any subsequent proceedings in court, the Company shall have the right to charge, receive and collect as temporary rates and charges not to exceed fifty cents ($.50) per one thousand (1,000) cubic feet of gas until the Company is furnishing gas through a pipe line of sufficient capacity, or (should the purchaser hereof already have that ten inch line named in Section 23) then through two pipe lines, as provided in Section 23 of this ordinance, and after it is furnishing gas through a pipe line of sufficient capacity, or (should the purchaser hereof already have that ten inch line named in Section 23), then through two pipe lines as aforesaid, not to exceed sixty cents ($.60) per one thousand (1,000) cubic feet of gas; but provided that of the amount collected under such temporary rates the Company shall under the direction and control of said Railroad Commission, or of the court, impound ten cents ($.10) per one thousand (1,000) cubic feet until the final fixation of just and reasonable rates and charges as aforesaid. Upon final determination of just and reasonable rates and charges as aforesaid, the sums so impounded together with all interest accumulations thereon shall be distributed under the order of said Commission, or court to the Company, or to its several customers, or in part to each, as the final determination may direct. If the Company during any part of the time prior to said final determination shall have collected sums including or other than those impounded, in excess of the rates and charges as finally determined, it shall then and thereupon repay said excess sums to the several customers who may have made such payments. The Company shall give to each customer a receipt for the amount paid by him pending the final determination of said suit or proceeding. It shall also keep an accurate record of all sums paid in by all and any of its customers under temporary rates and said records shall at all times be open to the City and to any customer as to his own contributions thereto; and the Company on demand from the City, if so ordered by said Railroad Commission, or other tribunal, or court, shall file with said Railroad Commission, or court, where said proceeding or suit may be pending, a full and detailed statement of the amounts, times and sums contributed by each customer to said funds. In addition to said temporary rates hereinabove provided for, the Company shall have the right to charge three cents ($.03) per one thousand (1,000) cubic feet, if the bill for service is not paid within ten (10) days after said bill is mailed or delivered to the customer.

"(F) The rates, charges or compensation to be charged, demanded and collected by the Company as herein provided shall be the total rates, charges and compensation charged, demanded and collected by the Company and they shall not be increased by any other charge or device of any kind or description. The rates, charges and compensation finally fixed and determined as provided in Subsection (D) hereof shall continue in

effect until modified, altered or changed under and pursuant to the provisions of the franchise, as hereinafter provided."

The bill discloses that, in compliance with section 4 (B), the plaintiff, within two days after the effective date of its franchise, promulgated in writing the rates proposed to be charged by it in rendering the service contemplated in the franchise, and that, as provided in section 4 (D) of the franchise, the city of Lexington and S. B. Featherstone, an interested citizen, for himself and other consumers, filed a complaint with the Railroad Commission, attacking the rates published by the plaintiff as excessive and extortionate, and asking that commission to fix just and reasonable rates to be charged by the plaintiff. After notice to the plaintiff, a hearing was had, and on October 9, 1929, the commission entered an order, holding that the rates proposed to be charged by the plaintiff were unreasonable and extortionate, and fixing 45 cents per 1,000 cubic feet, with an additional charge of 3 cents per 1,000 cubic feet for overdue bills, as the lawful rate to be charged by the plaintiff. The order further provides that the rate thus fixed should be effective from January 28, 1927, which date is declared by the order to be the effective date of the franchise.

The fourth and fifth paragraphs of the commission's order are as follows:

"Fourth. That the Central Kentucky Natural Gas Company filed herein, at the inception of this hearing and controversy, a copy of its ordinance-franchise whereunder it is operating in the City of Lexington; that said franchise-contract made certain stipulations and provisions about the fixation of rates under it, and that the Commission had conformed its procedure as near as might be to the agreements of the said franchise-contract. That it is provided in Section 4(E) of said franchise-contract that pending the final determination of just and reasonable rates and charges by this Commission and including any subsequent proceedings in Court, the defendant Company shall have the right to charge not to exceed sixty (60) cents per thousand cubic feet for its gas; and that in order to afford either side hereto the right, if it be so desired, to proceed in the courts with respect to such fixation of rates, the application of the forty-five cent rate hereby fixed is suspended for a period of thirty (30) days from the entry of this order; that if within said thirty day period either side shall have filed such proceeding in court, then the application of the forty-five cent rate hereby fixed shall be suspended until there be a final fixation in court of said rates, and subject to such modification, if any, of said rate as may be fixed by said Court or Courts; but that if no such proceeding be filed in said time, then the said forty-five cent rate shall at once be put into force and effect.

"That it be specifically recited and reserved, however, that no such suspension of the application of said forty-five cent rate shall affect the fact that it, or it as modified by the Courts, shall be effective from said 28th day of January, 1927.

"Fifth. That as appears of record herein there have been impounded under the control and orders of the Commission, as provided in Section 4(E) of said franchise, considerable sums of money out of the collections made by defendant Company as under the temporary rates by said section provided, which sums of money are to be distributed as under the orders of the Commission and as under the orders of the courts to which this controversy may be taken by the parties thereto. In consideration thereof it is ordered:

"(a) That John H. Carter as Special Receiver do file within thirty days from this date a full report of all sums received by him, the dates of his such receipts, the expenses and allowances incident thereto, how said funds are now held and invested, and the net amount thereof in his hands as such Receiver.

"(b) That upon motion of plaintiff said defendant company is ordered, within thirty days from this date, to file with this Commission a full and detailed statement and exhibit of the names of each and all customers who have contributed to said funds, and the times and amounts of their several contributions thereto.

"(c) That if there be instituted as within thirty days named in section four hereof, by either party, any suit to further try the rate controversy which is the subject of this proceeding, that the said impounded funds be retained in the custody and control of this commission, and not distributed until said Court proceedings have been fully determined; but that if said proceeding be not instituted in said thirty days, that this Commission will proceed to the distribution of said funds as may be proper in the premises.

"That it be specifically reserved and recited, however, that nothing herein shall affect the right and obligation of the Commission to finally pay out said funds as under its fixation of rates herein made, or as

942

same may be modified by the courts, and as is provided in said franchise-contract."

The bill alleges that the rates fixed are confiscatory, and that therefore the order deprives the plaintiff of its property without due process of law, and contains allegations appropriate to invoke the powers of a court of equity. The prayer of the bill is that the rates fixed by the commission be decreed to be confiscatory and in violation of the Fourteenth Amendment to the Constitution of the United States; that the defendants be temporarily and permanently enjoined from enforcing or attempting to enforce such rates; that the commission be temporarily and permanently enjoined from distributing the impounded funds referred to in the ordinance and in the order; that the commission be enjoined from requiring the filing of the report directed to be filed in the fifth paragraph of the commission's order; and that the commission be enjoined from making reparation awards.

The case is now before us on motion for a temporary injunction, under section 266 of the Judicial Code (28 USCA § 380). The defendants have filed answer, putting in issue all the material allegations of the bill, and specifically attacking the jurisdiction of this court, and also attacking the bill because of want of equity therein.

█ █ The defendants' contention, that this cause is not within the jurisdiction of a federal court, is asserted from so many different angles, and the claims so overlap each other, that it is difficult to take hold of the real nub of their contention. Boiled down, it seems to be defendants' contention that, in a rate controversy, where there is no diversity of citizenship, and no other federal question is made in the bill than the claim that the rate fixed by the rate-making body is confiscatory and deprives the plaintiff of his property without due process of law, the federal District Courts are without jurisdiction over the controversy, if the state statute under which the rate was fixed permits a judicial review in the state courts on the question of confiscation or if the order, as in this case, suspends its operation pending judicial review, provided such review is sought within the time fixed by the order. It seems quite clear to us that the defendants have confused the question of jurisdiction with the question of the merits of the case. It is well settled that a complaint setting forth a substantial claim of a federal right,

either under a federal statute or under the Federal Constitution, presents a case within the jurisdiction of the federal court, if the matter has reached the justiciable stage and if the jurisdictional amount is involved; and this is true, no matter how the court may ultimately decide the claimed federal right.

In the case of Binderup v. Pathé Exchange, 263 U. S. 291, 44 S. Ct. 96, 98, 68 L. Ed. 308, the Supreme Court of the United States used this language in discussing the question of federal jurisdiction based upon an asserted federal right:

"Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit."

See, also, Columbus Railway & Power Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Weiland v. Pioneer Irrigation Co., 259 U. S. 498, 42 S. Ct. 568, 66 L. Ed. 1027; Newburyport Water Co. v. Newburyport, 193 U. S. 561, 24 S. Ct. 553, 48 L. Ed. 795; Matters v. Ryan, 249 U. S. 375, 39 S. Ct. 315, 63 L. Ed. 654; Flanders v. Coleman, 250 U. S. 223, 39 S. Ct. 472, 63 L. Ed. 948; Lovell v. Newman & Son, 227 U. S. 412, 33 S. Ct. 375, 57 L. Ed. 577; Louie v. United States, 254 U. S. 548, 41 S. Ct. 188, 65 L. Ed. 399; Hart v. Keith Exchange, 262 U. S. 271, 43 S. Ct. 540, 67 L. Ed. 977; The Fair v. Kohler Die Co., 228 U. S. 22, 33 S. Ct. 410, 57 L. Ed. 716; Siler v. L. & N. R. R. Co., 213 U. S. 175, 29 S. Ct. 451, 53 L. Ed. 753; Nathan v. Rock Springs Distilling Co. (6th Cir.) 10 F.(2d) 268.

Measured by the rule laid down and recognized in the foregoing, as well as in numerous other cases, the bill in this case is undoubtedly sufficient to invoke the jurisdiction of this court as a federal court.

We shall therefore examine the defendants' contention that this court is without jurisdiction as though it were a motion to dismiss the bill, on the ground that as a matter of law there has been no denial of due process in this case, inasmuch as the question of confiscation can be examined in the state courts, and as the order, by its terms, suspends its operation pending court review, provided same is taken within 30 days.

Neither sections 201e-1 to 201e-26 of Kentucky Statutes, under which the Railroad Commission finds its authority for regulating the rates of the plaintiff, nor any other statute of Kentucky, provides for an appeal to the courts of the state by a utility company dissatisfied with the rates fixed by the commission. The statutes of the state do not specifically provide for a proceeding in equity, in which the rates thus fixed may be attacked as being confiscatory, but that such right exists was recognized by the Court of Appeals of Kentucky in the case of Louisville & Nashville Railroad Co. v. Greenbrier Distillery Co., 170 Ky. 775, 187 S. W. 296. On the other hand, the statute under which the commission proceeded to fix plaintiff's rates does not attempt to deny the right of a utility company, in an appropriate proceeding, to have a court of competent jurisdiction try out the question of confiscation and exercise its own independent judgment as to the law and facts. Therefore the statute under which the Railroad Commission proceeded does not of itself deny due process of law, as was true in the case of Ohio Valley Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908; Chicago, Milwaukee & St. Paul R. R. Co. v. Minnesota, 134 U. S. 418, 10 S. Ct. 462, 33 L. Ed. 970; Ohio Utilities Co. v. Public Utilities Commission of Ohio, 267 U. S. 359, 45 S. Ct. 259, 69 L. Ed. 656; Missouri Pacific Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. Ed. 1507; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596.

The fact, however, that a state rate-fixing statute does not by its terms deny due process of law, by no means results in closing the door to a judicial inquiry as to whether or not a rate fixed by a rate-making body under the statute amounts to confiscation and denial of due process under the Fourteenth Amendment. The statute may be valid when measured by the Fourteenth Amendment, and yet the action of the rate-making body in fixing the rate complained of may be invalid under the amendment. In such a case, the moment the legislative act of fixing the rate has been completed and the rate-making body has the power and is under the duty to enforce the rate, unless restrained by court proceedings, the justiciable stage is reached, and, irrespective of diversity of citizenship, the complaining utility, under section 24 of the Judicial Code (28 USCA § 41) may seek the protection of a federal court, even though the state law affords a like procedure in the state courts. In either jurisdiction exactly the same question would be involved, viz. Is the rate so low as to be confiscatory, thereby resulting in depriving the plaintiff of his property without due process of law? If the complaining party pursues the state remedy, and the state court, under the state law, is authorized to and does exercise its independent judgment on both the law and facts as to the question of confiscation and decides against the plaintiff, that is the end of the matter, and the case is res judicata, unless on error to the Supreme Court it should be determined that the state court acted arbitrarily or proceeded upon some fundamental error of law. But, as the question involved is a federal one, the plaintiff could have pursued his remedy in the first instance in the federal court. The state court procedure provided by the state law is simply an alternative elective remedy. Railroad & Warehouse Commission of Minnesota v. Duluth Street Ry. Co., 273 U. S. 625, 47 S. Ct. 489, 71 L. Ed. 807; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975; Bacon v. Rutland Railroad Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659; Prendergast v. New York Telephone Co., 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853; Detroit & Mackinac Railroad Co. v. Michigan Railroad Commission (D. C.) 203 F. 864; Detroit & Mackinac Railroad Co. v. Michigan Railroad Commission, 235 U. S. 402, 35 S. Ct. 126, 59 L. Ed. 288; Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Commission (D. C.) 292 F. 139; Van Wert Gaslight Co. v. Public Utilities Commission (D. C.) 299 F. 670; Union Light, Heat & Power Co. v. Railroad Commission (D. C.) 17 F.(2d) 143.

The defendants have entirely overlooked the fact that the Supreme Court cases re-

ferred to in Judge Cochran's opinion in the case of Central Kentucky Natural Gas Co. v. Mt. Sterling (D. C.) 32 F.(2d) 338, and other cases of a similar character, were either dealing with the question of the constitutionality of statutes when measured by the Fourteenth Amendment, or with the question of whether or not a particular state court procedure which had been followed by the complaining party had denied due process, and the court in that case apparently fell into the same error. None of these cases is authority in support of defendants' contention that, when the state law permits a judicial review of a rate fixed by a rate-making body, that fact, as a matter of law, is such due process as to deny a federal court the power to hear and determine the question of confiscation in a suit brought in such court upon completion of the rate-making act.

Defendants point to the fourth paragraph of the Railroad Commission's order in support of their contention that the order fixing the 45-cent rate does not amount to a taking of plaintiff's property without due process of law. This contention is based on the provision in that paragraph of the order suspending the 45-cent rate for a period of 30 days after the entry of the order, and, if a proceeding is instituted in court within that time, for such additional time as the matter is pending in court. It is argued that, as the operation of the order is thus suspended pending a judicial determination of the question of confiscation, there has been and can be no taking without due process. The trouble with this contention is that the defendants entirely ignore the plight the plaintiff found itself in upon entry of the order complained of. Plaintiff was then faced with the necessity of making a decision as to whether it should or should not resist the order in a judicial proceeding. If it did not resist, then by the terms of the order it became operative at the end of 30 days. So from the very date of its entry the Railroad Commission was under the duty of enforcing the order at the end of 30 days if court proceedings had not been instituted; and, by the express language of the order itself, the commission was threatening so to do.

■ It must not be forgotten that the prohibitions contained in the Fourteenth Amendment apply to each of the three branches of the state government. As pointed out in the case of Chicago, Burlington & Quincy R. R. Co. v. Chicago, 166 U. S. 226, 233, 17 S. Ct. 581, 583, 41 L. Ed. 979: "The prohibitions of the amendment refer to all the instrumentalities of the state—to its legislative, executive, and judicial authorities—and therefore whoever, by virtue of public position under a state government, deprives another of any right protected by that amendment against deprivation by the state, 'violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.'"

■ Therefore, if the rate fixed by the commission is confiscatory and its observance had been enforced by the commission such enforcement would have resulted in depriving the plaintiff of its property without due process of law irrespective of the fact that the plaintiff might have appealed to a state court for judicial determination of the question of confiscation. If, then, its enforcement by the Railroad Commission would deprive the plaintiff of its property without due process of law, undoubtedly such threatened enforcement justified a resort to a court of equity to prevent such confiscation, provided the other necessary grounds for equitable jurisdiction exist. Such a suit would present solely a controversy arising under the Constitution of the United States, of which District Courts are given jurisdiction under section 24 of the Judicial Code (28 USCA § 41).

■ It is rather hesitatingly suggested by the defendants that the action of the Railroad Commission complained of cannot be considered as a denial by the state of due process, for the reason that the Railroad Commission, by virtue of the agreement set forth in section 4 of the franchise ordinance, acted as arbitrators chosen by the parties to fix the rate, and not as a state agency vested by law with the power to fix plaintiff's rates. A most superficial reading of the franchise, however, discloses the fallacy of this contention. The provisions found in section 4 of the ordinance are the very antithesis of an arbitration agreement. Instead of indicating an intention to be bound by the action of the Railroad Commission, as would have been the case in an arbitration agreement, there is specifically reserved to each party the right to resort to the courts to test the legality of the rate fixed. At most, the franchise simply expresses the agreement of the parties that the rate to be charged may be fixed and determined in the manner provided by state law. Such an agreement cannot be twisted into an undertaking on the part of the plaintiff to abide by the action of the commission, if it conceives its federal constitutional rights to be violated by the order, nor into an agree-

ment to seek redress for such wrong, if any, in the state courts. See Railroad & Warehouse Commission of Minnesota v. Duluth Street Ry. Co., supra.

We must hold, therefore, that this court has jurisdiction of the controversy, and that the mere fact that the state courts are open to the plaintiff to have judicially determined the question of confiscation does not prevent the order of the Railroad Commission and its threatened enforcement from being violative of the Fourteenth Amendment, if, in fact, the rate fixed is confiscatory.

Defendants contend, perhaps not strenuously, that there is no equity in the bill. The allegations therein as to the penalties which might have been inflicted, had the plaintiff disregarded the order fixing the rates and taken no steps to enjoin its enforcement, and the danger of numerous suits by customers for overcharges had no such steps been taken, are sufficient to support equitable jurisdiction.

In view of the conclusions herein announced, it becomes our duty to hear and determine de novo the questions of fact and law as to whether or not the rate complained of is confiscatory. In such a hearing we are not confined to the testimony heard before the commission, as we probably would be had the commission's order been attacked solely on the ground that it was arbitrary and capricious. Of course, we are not to be understood as holding that the parties may not, by agreement, try the case before us upon the same evidence heard by the commission. The conclusions herein announced, however, do not require that the temporary injunction sought shall be granted to the full extent asked by the plaintiff.

By the express provisions of the franchise ordinance, the plaintiff agreed to the rates which it would charge during the pendency of any suit brought to judicially determine the lawfulness of the rate fixed by the commission, and the commission's order recognizes and respects that agreement. The plaintiff is in no position, therefore, to ask the assistance of this court in violating such agreement. Neither is the plaintiff entitled to a temporary injunction to prevent the enforcement of the 45-cent rate, nor to prevent distribution of the impounded funds, nor to prevent reparation awards by the commission. The order in terms suspends all of these matters so long as the question of the rate is pending in court.

Section 4 of the franchise ordinance, after providing for the charges which may be made pending investigation by the Railroad Commission and any subsequent proceeding in court, and for the impounding of 10 cents per thousand cubic feet of such charge, further provides:

"It shall also keep an accurate record of all sums paid in by all and any of its customers under temporary rates and said records shall at all times be open to the city and to any customer as to his own contributions thereto; and the company, on demand from the city, if so ordered by said Railroad Commission or other tribunal, or court, shall file with said Railroad Commission or court where said proceedings or suit may be pending, a full and detailed statement of the amounts, times and sums contributed by each customer to said funds."

By virtue of this provision, the Railroad Commission in its order directed the plaintiff, within 30 days, to file with the commission a full and detailed statement and exhibit of the names of each and all customers who have contributed to said funds, and the times and amounts of their several contributions thereto. Before the expiration of the 30-day period this suit was filed, and by the terms of the franchise ordinance such a report, if required to be filed, should be filed with this court, and not with the Railroad Commission. No good purpose could be served at this time in requiring the plaintiff to go to the expense of filing such a report with the Railroad Commission. If, ultimately it should be determined that the rate fixed is confiscatory, the plaintiff would have been put to the expense of compiling and filing such a report when there was no necessity therefor. For this reason a temporary injunction may issue to the extent of prohibiting the commission from requiring the filing of such report.

An order conforming to the views herein expressed may be prepared by counsel and submitted for entry.