PACIFIC TELEPHONE & TELEGRAPH COMPANY *v.* KUYKENDALL, AS DIRECTOR OF PUBLIC WORKS OF WASHINGTON, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

Nos. 540 and 789. Argued April 17, 1924.—Decided May 26, 1924.

1. When the jurisdiction of a state court to review orders of a commission fixing rates is confined to determining on the record certified by the commission whether the order is lawful and reasonable and whether evidence was improperly excluded, without power to pass on the weight or sufficiency of evidence or to enter any new order in lieu of the one appealed from, the remedy is purely judicial, and need not be invoked by a party complaining of the rates fixed as confiscatory, before seeking relief in a federal court. Remington's Comp. Washington Stat. 1922, § 10428, considered. P. 200.

2. A state statute empowering a commission after hearing to refuse an increase of rates proposed by a public utility, cannot, by forbidding supersedeas until a final judicial decree has been rendered in the state courts, prevent recourse to a federal court for temporary relief by injunction. P. 201.

3. Under the law of Washington, Rem. Comp. Stat. 1922, § 10441, providing for revision of administrative valuations of the property of public utilities, the function of the state courts is not merely judicial but also legislative, since they can pass upon the weight of evidence, and can set aside a valuation and make a new one. *Keller* v. *Potomac Co.*, 261 U. S. 428. *Id.*

4. The fact that a public utility had resorted to the state courts, acting legislatively, to change a valuation of its property, would not bar it from seeking relief in the federal court against rates based on the valuation as approved by the state courts. P. 203.

5. Comity usually prevents seeking such relief in a federal court before the legislative remedy in the state courts has been exhausted. *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210.   P. 203.

6. But when a public utility, by reason of an order reinstating rates which it sought to increase, is suffering daily from confiscation, and under the state law (Rem. Comp. Stat. 1922, § 10429) no stay is allowable pending revision by the state courts, comity does not prevent relief by a federal court.   P. 204.

7. A litigant whose constitutional rights are being invaded and to whom a statute denies a supersedeas in the state tribunals may properly base his application for equitable relief on the effect of the statute and the presumption of its validity, and is not required to establish that the state statute is not invalid under the state constitution.   *Dawson* v. *Kentucky Distilleries Co.*, 255 U. S. 288. P. 205.

8. Where appeal from an order refusing an interlocutory injunction is followed by an appeal from a final decree dismissing the bill, on the same ground, the first appeal should be dismissed and relief be granted under the second.   *Id.*

Reversed.

APPEALS from decrees of the District Court refusing an interlocutory injunction and dismissing the bill, in a suit to enjoin interference with increases of telephone rates.

*Mr. Otto B. Rupp,* with whom *Mr. Frank T. Post, Mr. H. D. Pillsbury, Mr. C. M. Bracelen* and *Mr. W. V. Tanner* were on the briefs, for appellant.

*Mr. John H. Dunbar,* Attorney General of the State of Washington, *Mr. Thos. J. L. Kennedy* and *Mr. Alex M. Winston,* with whom *Mr. H. C. Brodie, Mr. J. M. Geraghty* and *Mr. E. K. Murray* were on the briefs, for appellees.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These are two appeals from the District Court in the same case involving the question of the confiscatory char-

acter of rates for telephone service within the State of Washington and in the cities of Seattle and Tacoma, to which rates the appellant company is limited by a refusal of the Department of Public Works to permit an increase thereof. The Pacific Telephone & Telegraph Company is a corporation of California authorized to do business in Washington and owning a plant covering the State. It owns all the stock of the Home Telephone Company which owns and operates the Spokane Exchange. A similar question as to confiscatory rates has arisen in respect to that company and that exchange, but a separate bill was filed by that company and is considered on appeal in a case reported next after this.

This bill by the Pacific Company seeks an injunction against the Department of Public Works of the State to prevent it from interfering with the maintenance and collection of the increased rates the Company proposes in all parts of Washington except Spokane. A court of three judges was organized to hear the application for a temporary order. The suit depended for jurisdiction both on the diverse citizenship of the parties and upon the averment that the order of the Department of Public Works if enforced would deprive the company of its property without due process of law, in violation of the Fourteenth Amendment. The court set aside the temporary restraining order issued by the District Judge on the filing of the bill and denied the application for temporary injunction. Appeal was taken direct to this Court under § 266, Jud. Code, as amended by the Act of March 3, 1913, c. 160, 37 Stat. 1013. After the denial of the temporary injunction, the District Judge heard the case on a motion to dismiss the bill and granted the motion, and from this final decree a second appeal was taken.

The bill of complaint shows that on August 8, 1919, the Public Service Commission of the State, the predecessor of the Department of Public Works, made an order

prescribing maximum rates and charges to be charged by the Pacific Company on and after that date within the State of Washington which are made an exhibit to the bill; that on September 20, 1922, the company filed a schedule of rates with the Department of Public Works increasing rates to be charged for exchange telephone service in all the exchanges owned by the company in Washington; that the Department on September 24, 1922, suspended the rates for thirty days, and that after numerous hearings as to their reasonableness, the Department by a majority of two members on March 31, 1923, denied the increase. The bill further averred that the fair and reasonable value of the property of the company in Washington, not including the Spokane plant, was $35,616,896, which includes $20,852,067 for the Seattle plant, and $3,457,290 for that of Tacoma, and that this estimate includes nothing for franchises and nothing for going concern; that the fair annual return which the company was entitled to earn was eight per cent. on this value, whereas the actual return was as follows:

|  | Cost. | Fair value. |
|---|---|---|
| Year 1919, State of Washington | 4.97% | 3.67% |
| Year 1919, City of Seattle | 3.97% | 2.66% |
| Year 1919, City of Tacoma | .98% | .81% |
| Year 1920, State of Washington | 4.42% | 3.33% |
| Year 1920, City of Seattle | 1.85% | 1.29% |
| Year 1920, City of Tacoma | .89% | .74% |
| Year 1921, State of Washington | 3.30% | 2.58% |
| Year 1921, City of Seattle | .69% | .52% |
| Year 1921, City of Tacoma | .58% | .48% |
| Year 1922, State of Washington | 3.17% | 2.58% |
| Year 1922, City of Seattle | .19% | .15% |
| Year 1922, City of Tacoma | .89% | .75% |

that such returns were confiscatory and a violation of the rights of the company under the Fourteenth Amendment; that therefore the order of March 31, 1923, was void; that the company had no adequate remedy at law; that, if an attempt were made to enforce the rates it proposed to

make, the Department of Public Works and others in state authority, defendants, would, unless restrained by the court, institute proceedings to compel compliance with the confiscatory schedule, and that the company and its officers and employees would be subjected to a multiplicity of suits, and incur criminal penalties prescribed by the laws of the State.

By the statutes of Washington (§ 10428, Remington's Comp. Stat. 1922), any complainant affected by any order of the Commission (now the Department), may within thirty days apply to the Superior Court of the proper county for a writ of review " for the purpose of having its reasonableness and lawfulness inquired into and determined." The Commission certifies the record upon which the court is to enter judgment affirming or setting aside the Commission's order. If reversed for failing to receive proper evidence offered, the case is to be referred back to the Commission to receive the evidence and enter a new order. The court may remand any case reversed by it to the Commission for further action. It is clear that the function to be performed by the Superior Court under this section is judicial. It does not fix rates or enter a new order as to them. It does not pass on the sufficiency or weight of evidence. It only looks into the reasonableness and lawfulness of the order of the Commission and is to determine whether evidence which should have been received was rejected, and in that case is to send the case back to the Commission for a new order. The court does not act legislatively.

Instead of applying to the Superior Court of the State therefore, application was made by the bill herein to the Federal District Court within the thirty days to restrain the order of the Department as violative of the Fourteenth Amendment.

By § 10424, Remington's Comp. Stat. 1922, relating to the filing of tariffs increasing rates and providing for a

hearing on such proposed increase and the suspension of the schedule pending the hearing, it is declared that:

"If the commission shall at the conclusion of the hearing refuse to permit such increase, either in whole or in part, no supersedeas shall be granted in any action or proceeding brought to review the order of the commission pending the final determination of such action by the superior court, or, if appealed to the supreme court, by such supreme court."

It is apparent from these provisions that, after the Commission finally denied the increase of rates applied for, the company had exhausted its administrative remedy to avoid the alleged confiscatory rates under which it was compelled to render the service. It had, therefore, no recourse but to a court. Both by reason of diverse citizenship and because of the federal constitutional question the federal court of equity was available to it. The state statute forbidding a stay of proceedings until a final judicial decree was rendered, of course, could not prevent a federal court of equity from affording such temporary relief by injunction as the principles of equity procedure required. The conditions set out in the bill, therefore, seem to have made a case ripe for federal relief. *Bacon* v. *Rutland R. R. Co.,* 232 U. S. 134; *Prendergast* v. *New York Tel. Co.,* 262 U. S. 43, 48.

But it is urged that such relief is premature because the rates, increase of which was refused, were reasonable, and afforded an adequate return on the value of the property of the company used in the public service as fixed by the Commission in accord with the statutory procedure for that purpose, and that the company still has a right to appeal from the valuation of the Commission to the Superior and Supreme Courts on the legislative question of that valuation.

Section 10441 of the State of Washington (Remington's Comp. Stat., 1922) has elaborate provisions for the fixing

of the value of the property and equipment of a public service company. The company is given thirty days' notice of a hearing and is entitled to adduce evidence and to have it transcribed and certified. The Commission is to render findings of fact in writing concerning all matters concerning which evidence may be introduced tending to show the value of the company's property used for the public convenience. The company believing the findings to be unfair, unwarranted or unjust, may go into the Superior Court and have a writ of review of such findings and their correctness, reasonableness and lawfulness inquired into and determined, and if the court finds them to be " unjust, incorrect, unreasonable, unlawful or not supported by the evidence," it shall make " new and correct findings " unless it sets them aside for refusing to receive proper evidence, and returns them for new findings thereon. The company is given the right of appeal to the Supreme Court of the State which is given the same power as the Superior Court as to the findings of the Commission. The findings of the Commission as corrected by the courts are made admissible in evidence in any action or proceeding except in matters of taxation, and are to be conclusive evidence of the facts found under conditions then existing and can only be controverted by showing a subsequent change of conditions. Provision is made for further hearings to ascertain betterments, improvements, extensions and additions, and the values of the property used by the company for interstate and for intrastate business.

It is clear that the function of the courts in fixing the valuation of the property of the public utility is not confined to a judicial review of the work of the Commission. The courts are made part of the valuation tribunal, pass on the weight of the evidence, and can set aside a valuation and make a new one. *Keller* v. *Potomac Co.,* 261 U. S. 428.

It is thus apparent that the contention of the Department and the state authorities that the company has not exhausted its remedy to secure a change in the valuation of the property by the Superior and Supreme Courts of the State is correct, and that resort to them to change the valuation would be no bar to a resort to a federal court of equity to enjoin the enforcement of rates based upon such valuation after it had been approved by the state courts. It was on this ground that the District Court held both on the application for a temporary injunction before the three judges and upon the final dismissal that the bill was premature, and could not be brought until after the final confirmation of the valuation by the State Supreme Court.

The District Court relied on the case of *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210. In that case, the tribunal which fixed railroad rates that were the subject of controversy consisted not only of a commission but of the Supreme Court of the State on appeal, and the court in reaching its conclusion acted legislatively, as the commission did. It was held that as the complaining company had not exhausted its legislative remedy by appeal to the Supreme Court of the State, for its final action in the fixing of rates, comity, in absence of a controlling right to the contrary, required that the federal court delay remedy by injunction against the rates fixed until the company had invoked the conclusion of the State Supreme Court in respect to them. So here it is contended that until the Superior and Supreme Courts shall have finally considered the correctness of the valuation upon which the adequacy of the rates depends, comity requires that the federal court shall stay its hand.

It is first objected to this view that the constitution of the State of Washington does not authorize its legislature to vest its courts with the legislative power to fix rates, and therefore that, after the Commission had fixed the

valuation, further procedure in fixing valuation was void, and there was no reason either of comity or right which should delay the remedy by a bill in a federal court. *Territory ex rel. Kelly* v. *Stewart*, 1 Wash. 98, 110; *State ex rel. Seattle* v. *Public Service Commission*, 76 Wash. 492, 500. It is our duty to avoid expressing an opinion on such an issue under the constitution of Washington in the absence of a clear decision by its highest court, if we can do so; and we think we can.

In the case before us, the company is shown by the averments of its bill to be suffering daily from confiscation under the rates to which it is now limited. It has done all it could to get relief and can not get it. The rates here in question were in force for more than a year, the company advanced them, the old rates were reinstated by the Department of Public Works. In such a case then there was no chance for a stay. By § 10429 (Remington's Comp. Stat., 1922) the pendency of any writ of review does not of itself stay or suspend the operation of the order of the Commission, but the Superior Court may suspend the order, but no order suspending an order of the Commission relating to rates, etc., can be made unless the court finds that great or irreparable damage would be done to the petitioner, and the section contains the following proviso:

" Provided, however, that when any rate has been in force for any length of time exceeding one year, and such rate is advanced by the public service company, and the order of the commission reinstates such prior rate, in whole or in part, no supersedeas shall be allowed in any case from such order pending the final determination of the cause in the superior court, or if appealed to the supreme court by such supreme court."

Under such circumstances comity yields to constitutional right, and the fact that the procedure on appeal in the legislative fixing of rates has not been concluded

will not prevent a federal court of equity from suspending the daily confiscation, if it finds the case to justify it. *Oklahoma Gas Co.* v. *Russell,* 261 U. S. 290, 293. In such a case the *Prentis Case* has no application. *Love* v. *Atchison, etc. Ry. Co.,* 185 Fed. 321, 324, 325.

But it is argued that the courts of Washington have inherent power to grant a supersedeas in such a case and that §§ 10429 and 10424, *supra,* are invalid. As we have declined to look into the validity of the legislative functions with which the Washington state courts are vested in the valuation sections, so we decline to examine the validity of these restraints upon those courts to grant stays in cases of rates. A litigant whose constitutional rights are being invaded and to whom a statute denies a supersedeas in the state tribunals may properly base his application for equitable relief on the effect of the statute and the presumption of its validity, and is not required to establish that the state statute is not invalid under the state constitution. *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 296, presents an analogous case.

Nor does the provision of § 266 of the Judicial Code (37 Stat. 1013, c. 160), that a suit in a state court to enforce the rate complained of accompanied by a stay, shall suspend the proceedings in the federal court, prevent the filing and prosecution of this bill, first because no such suit seems to have been brought, and, even if it had been, there certainly has been no stay of proceedings in the state court as provided in that section. *Dawson* v. *Kentucky Distilleries Co., supra.*

We think, therefore, that the District Court erred in denying a temporary injunction under § 266 on the ground that the bill was premature.

But it is said that the appeal from the interlocutory decree in No. 540 was merged in the appeal from the final decree in No. 739, and therefore should be dismissed. A motion was made for this purpose. We think that under

*Shaffer* v. *Carter,* 252 U. S. 37, 44, this motion should be granted; but it does not change the ultimate result, because the final decree of the District Court dismissing the bill really turned on the same erroneous ruling of its prematurity as that upon which the temporary injunction was denied and must be reversed for the same reason.

After the case was reached in this Court, somewhat extended argument was made in the later appeal to show that the bill was defective in stating a case for equitable relief even if it was not premature. The argument is based on objections which seem to us to be rather makeweights or afterthoughts, and are so unsubstantial that we do not discuss them. The merits of the issue between the parties can be developed after the case is remanded to the District Court for further proceedings.

*Decree reversed and cause remanded for further proceedings in conformity with this opinion.*