## DENVER & R. G. W. RY. CO. et al. v. LINCK et al.

### No. 517.

Circuit Court of Appeals, Tenth Circuit.

March 9, 1932.

Rehearing Denied April 16, 1932.

958

W. Q. Van Cott, of Salt Lake City, Utah (Waldemar Van Cott, P. T. Farnsworth, Jr., and B. R. Howell, all of Salt Lake City, Utah, on the brief), for appellants.

Henry D. Moyle, of Salt Lake City, Utah (Robert C. Wilson, of Salt Lake City, Utah, for appellee W. H. Linck, Jr., and Charles M. Morris and Edward R. Callister, both of Salt Lake City, Utah, for appellees Lester Anderson, Chris Anderson, J. H. Willardson, and Soren Christensen, on the briefs), for appellees.

Before COTTERAL and McDERMOTT, Circuit Judges, and KENNAMER, District Judge.

KENNAMER, District Judge.

Appellants, the Denver & Rio Grande Western Railway Company and Rio Grande Motor Way of Utah, Inc., seek to enjoin the defendants from operating motortrucks for the transportation of freight along routes established by them, and for which they have obtained certificates of convenience and necessity from the Public Utilities Commission of the state of Utah. The defendants may be grouped as those having connection with the Linck operations, including eleven defendants; those connected with Lester Anderson, including four defendants; and Mack Anderson and Jewel Anderson, who defaulted and against whom a decree pro confesso was entered.

The Denver & Rio Grande Western Railway Company is the owner and operator of a railroad line extending from Denver, Colo., into Utah. It has a branch line at Thistle, Utah, which extends to Marysvale, Utah; other branches extend westerly, and the branch lines constitute what is commonly called the "Marysvale Branch" and the Marysvale branch territory. This branch line has been operated by the railroad company for forty years prior to the decree entered herein, and represents an investment of approximately four million dollars.

For many years prior to the filing of the bill there has been an increasing diversion to autotrucks for the handling of freight into and out of the Marysvale territory, and in order to cope with the changing situation the railroad company organized the Rio Grande Motor Way of Utah, Inc., and owned 80 per cent. of its stock. This corporation, organized under the laws of Colorado, was granted a certificate of convenience and necessity to operate an automobile truck line for the carriage of freight between Salt Lake City and the points in the Marysvale branch territory on October 30, 1929.

During December, 1927, three of the defendants, W. H. Linck, Jr., Walter H. Schoenfeld, and Clarence Pehrson, applied to the Public Utilities Commission of Utah for a certificate of convenience and necessity to operate a motortruck freight line from Salt Lake City to various points in the Marysvale territory. This application was denied for the reason that the applicants had been operating a truck line in violation of the provisions of the law. About one month thereafter, W. H. Linck, Jr., entered into a contract with Symns-Utah Grocer Company, by the terms of which Linck was to convey merchandise of the grocery company to various consignees in the Marysvale territory. On the same day the defendant Schoenfeld entered into a similar contract with the Utah Wholesale Grocery Company. About the same time, the defendant, Pehrson, entered into an oral contract with John Scowcroft & Sons Company of Odgen, Utah, similar in its terms to the other contracts. Subsequently, Linck entered into a contract with Sego Milk Products Company similar to the other contract referred to. Without any discussion with the merchants who were parties to the contracts, and without obtaining any consent thereto, the defendants, Linck, Schoenfeld, and Pehrson, about April, 1928, formed a pool of their operations, by the terms of which a weekly salary was to be paid to each of them and the balance of their earnings was to be applied toward the payment of trucks used in the operation. The contracts provid-

ed for payments by the merchants for the services to be rendered by defendants, but the defendants collected from consignees uniform freight rates, and these rates were applied to all other consignors and consignees, whether there were contracts in existence or not. These defendants, although denied a certificate of convenience and necessity, readily accepted all package freight tendered to them for shipment, and developed an extensive business, resulting in the obtaining of a building used for offices and for the receipt, classification, and consignment of shipments of freight. They had a listing in the telephone book and a sign painted on the building. They operated five trucks, in addition to a so-called pick-up truck, which was used for picking up shipments and bringing them to their building for classification as to the various points of destination. Uniform rates to all shipments were made, and bills of lading were made up for each of them. The defendants paid all their expenses of the operation of their trucks, as well as all claims of consignees or consignors for loss and damage.

The bills of lading were the form adopted by the Interstate Commerce Commission for the use of railroads as a uniform bill of lading, containing printed matter on the back of each bill of lading similar to those of appellant railroad company, as adopted for all railroad carriers by the Interstate Commerce Commission.

During the month of January, 1930, these defendants hauled from Ogden and Salt Lake City a total of 1,133 shipments of freight from 103 consignors to 117 different consignees situated in the various cities and towns in the Marysvale territory, and of these only 22 per cent. were hauled for merchants with whom these defendants had contracts. The record clearly shows that up to the time of the issuance of the temporary injunction these defendants were holding themselves out generally to the public for transportation of freight, and the persons who paid the freight charges had the power to designate whether the shipment should be carried by the railroad, the motor way company, or by the defendants. These defendants were operating as common carriers and had completely departed from their contracts. They were enjoined by the trial court from carrying on such operations.

Subsequent to the temporary injunction, the defendant Linck entered into a contract with John Scowcroft & Sons Company for the carriage of freight from Ogden into the various points in the Marysvale branch territory. The contract provided for the payment of rates as set forth in a schedule to be attached to the contract, but no schedule of rates was ever attached, and Linck was paid the same rates that had been collected by him prior to the preliminary injunction. The trial court found that Linck entered into the Scowcroft contract for the purpose of continuing in the business of hauling freight. Linck hauled freight to 117 consignees located in the Marysvale territory, being the same consignees to whom he had hauled prior to the preliminary injunction. He collected from these consignees the same freight rates that had been collected for similar shipments prior to the temporary injunction. The collections thus made by him constituted the only compensation he received, as he was not paid anything in addition thereto for his services by Scowcroft & Sons Company. Scowcroft & Sons Company had no interest in the transportation of its shipments other than to secure delivery thereof. Scowcroft & Sons Company shipped merchandise to its customers in any way they requested; the trucks used by Linck were owned by him, in which Scowcroft & Sons Company had no interest or equity, and all expenses incurred in the operation of the trucks had been paid by Linck. Similar bills of lading were used by Linck, and Linck conducted the business in precisely the same way that he had before the temporary injunction, except that he confined his operations to the 117 consignees whom he solicited as customers of Scowcroft & Sons Company. Linck paid the money he collected from the consignees to Scowcroft, and Scowcroft Company paid it back to Linck. It is significant that Scowcroft Company gave shipments to Linck only when the consignees, its customers, so directed, and Linck was paid by the consignees, and not by Scowcroft Company.

The defendants connected with the Lester Anderson operation consist of Chris Anderson, J. H. Willardson, and Soren Christensen and Lester Anderson. The evidence shows, and the trial court found to be a fact, that the defendants Chris Anderson, J. H. Willardson, and Soren Christensen executed a contract forming the Merchants Truck Owning Association. These three defendants were operators of individual mercantile institutions, and they formed the association for the purpose of hauling their own merchandise with a truck they purchased from the defendant Lester Anderson for $600. The evidence further disclosed, and the trial court so found, that subsequent to the formation of

said association, Lester Anderson had been employed by it on a salary basis. The association was formed for the transporting of merchandise required by these defendants in the several stores which they individually operated. The defendant Lester Anderson, prior to his employment by the ·three store owners, defendants herein, operated a truck for himself and hauled merchandise for the public, which was enjoined in this cause for the reason that his operations were contrary to the laws of Utah.

Appellants insist that the contract of Linck with Scowcroft, and the contract forming the Merchants Truck Owning Association, were merely subterfuges, and that in reality Linck and Lester Anderson are common carriers, hauling merchandise in competition with plaintiffs, in the Marysvale branch territory, but limiting their operations to the customers of Scowcroft and to the requirements of the three defendant store owners, and that their operations were in violation of the preliminary injunctions issued herein and contrary to the laws of the State of Utah. Appellants also contend that the trial court erred in refusing to award the costs to plaintiffs and in compelling appellants to bear the costs incurred in the proceedings.

The trial court determined that the defendants herein were illegally operating auto trucks for the transportation of freight as common carriers, and preliminary injunctions were issued against them. This determination was reaffirmed at the final hearing, with the exception that the trial court refused to enjoin the defendant Linck from operating under the Scowcroft contract, and Lester Anderson from operating a truck, as an employee, for the Merchants Truck Owning Association.

 The Public Utilities Act, section 4818, Complied Laws of Utah 1917, prohibits the operation of any freight service without first securing a certificate of convenience and necessity from the Public Utilities Commission. Common carriers are defined by the State Law (subsecs. 13, 14, and 28, section 4782, Complied Laws of Utah, 1917) to include the defendants operating autotrucks for the transportation of freight. It is suggested that the Public Utilities Act of Utah deprives public utilities, or individuals, of the right of injunction in an independent action, and confers the right exclusively upon the Public Utilities Commission. This is without merit, as subsection 1, section 4841, Comp. Laws Utah 1917, provides that the passage of the

Public Utilities Act shall not be deemed to waive any right of action by any person or corporation for any reason which might arise under the laws of the state. The laws of Utah expressly provide that injunction shall issue in cases such as the one here presented. Section 6688, Comp. Laws Utah 1917. The state cannot, even if it so desired, deprive the federal courts of their equity jurisdiction to grant injunctions in proper cases. Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975. Property rights may be protected by use of the injunction where an interference therewith will result in great or irreparable injury, and the use of an injunction is the appropriate remedy to protect a party in the enjoyment of an exclusive franchise against encroachment. See Pomeroy's Equity Jurisprudence, (2d Ed.) §§ 583 and 584 of Equitable Remedies and §§ 2016 and 2017; Public Utilities Commission v. Garviloch, 54 Utah, 406, 181 P. 272; · New York, New Haven & Hartford R. Co. v. Deister, 253 Mass. 178, 148 N. E. 590; Memphis Street Ry. Co. v. Rapid Transit Co., 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B, 1143, Ann. Cas. 1917C, 1045.

 The Linck operations, subsequent to the preliminary injunction, had been restricted to· 117 consignees, who were customers of Scowcroft & Sons Company. This alone is the only element which differentiates his operations from those prior to the issuance of the preliminary injunction. In all other respects his operations are similar. The fact that he ceased to be associated in interest in the operation of trucks with other defendants who purported to transport freight under private contracts is not material. The fact that there has .been a restriction in the number of consignees he serves, or the limitation of the consignees to those that are customers of a particular concern, does not change Linck's operations from those of a common carrier. See Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60· L. Ed. 984, Ann. Cas. 1916D, 765.

In our opinion, the Scowcroft contract is a subterfuge employed by Linck for the continuation of the business that he was doing illegally. Had there been a bona fide contract and an operation thereunder, Linck's operations may not have fallen under those of a common carrier. . It is apparent that the Scowcroft contract, while in form a contract for delivery of goods to the customers of Scowcroft & Sons Company, is in substance a subterfuge by which Linck is to be

permitted to continue in the operation of autotrucks for the transportation of freight in competition with appellants, who are the holders of the legal right to operate in the particular territory.

 Certainly a private carrier cannot be subjected to the requirements of a common carrier, but a person cannot, by the execution of a contract, change the character of his operations from those of a common carrier to those of a private carrier.

The trial court considered the case of State v. Nelson, 65 Utah, 457, 238 P. 237, 42 A. L. R. 849, controlling of the instant case. In that case an outdoor association operated for charity, had a camp, and required transportation for the use of persons using the camp and none others, contracted with Nelson to haul all such persons for a consideration of $20 per day, such consideration to be paid whether a maximum load was carried or no persons at all. The court held that Nelson was not within the prohibition, as he was a private carrier, as distinguished from a common carrier. It is to be observed that Nelson was not serving the public generally, but only persons using the camp. Nelson was employed by the association and not by its guests. Nelson never accepted any persons as passengers other than those designated by the association. The Nelson Case would be controlling if Scowcroft & Sons Company had engaged Linck for a stated consideration to deliver its goods. In fact, Linck was paid by the consignees, and a gesture made at turning the money over to Scowcroft, who immediately returned it to Linck. Private carriers may be employed for the transportation of freight or passengers, and they will not be subject to the Public Utilities Act of Utah (Comp. Laws Utah 1917, § 4775 et seq.) However, when operations are carried on, in form as private carriers, but in substance as common carriers, they will be subjected to the regulations and requirements of the Public Utilities Act.

We, therefore, conclude that the Linck operations are in substance those of a common carrier, and that the Scowcroft contract was a mere subterfuge, and that by reason thereof appellants should have the injunction sought by them as against Linck and those associated with him in the operation under the Scowcroft contract.

Appellants contend that the contract forming the Merchants Truck Owning Association is a subterfuge employed to permit the defendant Lester Anderson to continue to transport freight by autotruck over routes and into territory served by appellants. The trial court found that such a contract was entered into, and that the defendant, Lester Anderson, was employed by the association to transport freight to the several stores individually operated by the three other defendants. There was some evidence that the defendant Chris Anderson, the owner of a store and one of the contracting parties forming the association, was not able to tell the amount of his contributions to the association, and there was a discrepancy in some dates. However, the trial court concluded that the three individual store owners formed the association and employed Lester Anderson on a salary to operate a truck which they had purchased from him for the sum of $600. The evidence sustains the finding, and it will not be disturbed.

 Several individual owners of mercantile stores can jointly purchase, own, and operate a truck and employ a person to operate the same for the purpose of transporting merchandise required by them in the operation of their stores. Such store owners are not required to obtain certificates of convenience and necessity, and are not required to comply with the Public Utilities Act, as long as the operation of the truck is confined to the carrying on of their respective mercantile businesses. If they operate the truck for others and as a common carrier, as well as for their own institutions, they would then become subject to regulation by the Public Utilities Commission. The defendant Lester Anderson may operate a truck for an association of merchants just as he could obtain employment and operate a truck for the appellants. In so doing, he is merely an employee and will be engaged in the business of his employer; if his employer is a private carrier, then that will constitute his business; if he is employed by a common carrier, then he becomes engaged in a business of that character. The fact that Lester Anderson has previously been engaged as a common carrier illegally does not prevent him from continuing to operate a truck so long as his operations are those of a private carrier, or as an employee of a private carrier.

 The costs of this action and all of its proceedings should have been awarded to the plaintiffs below, appellants herein, and against the defendants. The plaintiffs obtained the relief sought by their actions in the trial court, although another course of action was adopted by the defendants to evade the effect of the proceedings. The trial court found, in excepting from the injunc-

tions issued in the cause, the operations under the Scowcroft and Merchants Truck Owning Association contracts, that the contracts were entered into to enable the defendants to continue the hauling of freight by trucks to evade the injunctions. Because of the illegality of the defendants' operations, and the invasion of plaintiffs' rights by them, plaintiffs should have been awarded the costs of the entire proceedings.

The decree of the trial court is reversed as to Linck and those associated with him in his operation, with directions to enter a decree of injunction, and the decree of the trial court is affirmed as to Lester Anderson, Chris Anderson, J. H. Willardson, and Soren Christensen, costs to be awarded plaintiffs as against the Linck group of defendants.