ROY A. GARDNER V. RAILROAD COMMISSION OF TEXAS, ET AL.

No. A-7734. Decided March 23, 1960.
(333 S.W. 2d Series 585)

*Dan Moody, McKay & Avery,* and *John J. McKay,* all of Austin, for Relator.

*Will Wilson,* Attorney General, *John Wildenthal, Jr.,* Assistant Attorney General, for Railroad Commission of Texas, *Black & Stayton* and *John W. Stayton,* for Christie, Mitchell and Mitchell Co., all of Austin, for Respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

Roy Gardner brings this direct appeal from the 126th District Court of Travis County. Because the appeal does not come within our limited jurisdiction on direct appeal, we do not reach the merits of the controversy and must dismiss the appeal.

Gardner brought in a gas well in Matagorda County in December of 1958. The Railroad Commission classified the well as a discovery well in the Bruce-Flo or Frio E-3 sand. With that classification, the well was entitled to produce for 18 months at the rate of 25% of its potential under statewide rules 24 and 25 of the Railroad Commission. Gardner contracted to sell that production to Tennessee Gas Transmission Company.

In the vicinity there were a number of other gas wells producing from the Palacios sand or reservoir. These wells were under fieldwide proration orders, and wells in this field were allowed to produce substantially less than Gardner's well which was regarded as being in a separate reservoir.

On December 15, 1959, at the instance of producers in the Palacios field, particularly Christie, Mitchell and Mitchell, the Railroad Commission determined that Gardner's well was not in a separate reservoir after all, but was in a common reservoir with those in the Palacios field. Hence Gardner's well was not a discovery well in a new field and was subject to the same fieldwise proration orders as others in the Palacios field. As a result of the Commissioner's redetermination, Gardner's allowable gas production was cut from approximately 4 million cubic feet per day to approximately 600,000. In dollars and cents, it cut his production from approximately $800 per day to roughly $100 per day.

On December 22, 1959, Gardner filed suit in the 126th District Court of Travis County to set aside the order of the Commission which placed his discovery well in the common Palacios reservoir and so drastically reduced his allowable production.

On December 30, the Commission formalized its order of December 15. It determined that Gardner's well was in a common reservoir with the wells in the Palacios area.

On January 1, 1960, Judge Jack Roberts, presiding in the 126th District Court, entered a temporary restraining order enjoining the enforcement of the Commission's orders of December 15 and 30. By agreement of counsel the temporary restraining order was kept in force until and during the trial of the case.

On Feburary 3, 1960, after a trial, Judge Roberts announced and entered his judgment that the Commission's orders of December 15 and 30 were void ad initio: that they were arbitrary, illegal, and were not reasonably supported by substantial evidence. The judgment of February 3 permanently enjoined the Commission from enforcing those orders.

On the same day, February 3, the Commission, and persons aligned with it, excepted to the judgment and gave notice of appeal to the Court of Civil Appeals sitting at Austin. It was the position of the Commission, and the Attorney General representing it, that because the State is not required to post a supersedeas bond, the giving of the notice of appeal then and there terminated the jurisdiction of the trial court and placed the jurisdiction in the Court of Civil Appeals.

It was and is further the contention of the Commission and the Attorney General that giving of notice of appeal performed the function of a writ of supersedeas and that the judgment of the district court of February 3, including the permanent injunction, was thereupon superseded. They point out that the trial court did not, prior to judgment, grant a temporary injunction or enter an order continuing the temporary restraining order after judgment.

In his order of February 10, later referred to, Judge Roberts recited that prior to the entry of the judgment of February 3, counsel for Gardner requested a temporary injunction to continue the status quo [that Gardner's well was a discovery well in a separate field and entitled to the larger allowable], but he

did not grant the injunction because "the Court had no information * * * to the effect that the Commission would attempt to re-assert jurisdiction during the appeal of the case to change the status quo of the parties. * * *"

After the entry of judgment by Judge Roberts on February 3, the Commission, upon advice from the Attorney General, determined that the judgment, holding that its orders were void, had been superseded. It thereupon determined that its orders of December 15 and 30 should be complied with by Gardner and others until the matter was finally determined upon appeal.

So on February 8, 1960, the Commission, through its chief gas engineer, wrote Gardner. He told Gardner that the Commission's order putting Gardner's well in the common Palacios pool went [back] into effect on February 3 upon the Commission's giving notice of appeal to Judge Roberts' judgment. The letter then said, "Therefore we are placing this well on the proration schedule for the Palacios (Frio E sand) effective February 3, 1960."

At about the same time the Commission wired its agent in Houston that "You are advised that the restraining order [as to Gardner's well] has been dissolved * * *" and that he should "act accordingly"; i.e., he should enforce the Commission's proration order for the Palacios field against Gardner.

Gardner reacted promptly. On the same day, February 8, he filed in Judge Roberts' court a cotion for partial new trial. He set out the above and other facts and prayed particularly for a temporary restraining order and temporary injunction against the Commission's order pending appeal to preserve the status quo.

On the same day, February 8, Judge Roberts entered such a temporary restraining order. He set the matter down for a hearing on the matter of the temporary injunction for February 15. This action by Judge Roberts, on Feburary 8, was within ten days from the entry of his judgment on February 3.

The Commission and its ally, Christie, Mitchell & Mitchell, reacted with equal swiftness. They promptly moved to dissolve Judge Roberts' restraining order. Their motion to dissolve was overruled on February 10. On that same day, the Commission and its allies filed in the Third Court of Civil Appeals at Austin an application for a writ of prohibition against Judge Roberts.

On February 11, 1960, the Court of Civil Appeals granted the writ of prohibition. Its opinion, Railroad Commission v. Roberts, 332 S.W. 2d 745, sets out at length the facts and various orders above described. That court concluded that Judge Roberts' judgment of February 3 had been superseded by the giving of notice of appeal to the Court of Civil Appeals, and that his temporary restraining order of February 8 denied to the Commission its right to supersede the judgment. The Court of Civil Appeals was of the further opinion that its jurisdiction had attached to the case upon the giving of notice of appeal by the State on February 3. Hence it issued the writ of prohibition under Article 1823 as one which was "necessary to enforce the jurisdiction" of the court. The order of the Court of Civil Appeals restrained Judge Roberts from enforcing his restraining order of February 8 and "from taking any further action of any kind whatsoever with respect to" the matter which would interfere with its jurisdiction or which would interfere in any way with the rights of the Commission to supersede Judge Roberts' judgment of February 3.

No appeal was taken to this Court from that order. Indeed there is no provision for an appeal to this Court from a writ of prohibition issued by a Court of Civil Appeals.

Following that opinion and order of the Court of Civil Appeals, we come to the order which is the subject of this direct appeal. On February 12, the day after the action by the Court of Civil Appeals, Judge Roberts dissolved his temporary restraining order of February 8, and directed that Gardner take nothing by virtue of his motion for partial new trial and request for injunctive relief pending appeal.

Judge Roberts entered such order of February 12 in compliance with the writ of prohibition of the Court of Civil Appeals. His order of February 12 plainly states, "* * * therefore, in compliance with said order of the Honorable Court of Civil Appeals, *this court must*" adjudge the Commission "directive" of February 3, the main portion on the merits of the case, is on dissolved.

It is this order of February 12, issued under compulsion of the Court of Civil Appeals, which is the subject of the direct appeal, not the judgment of Judge Roberts on February 3 holding invalid the Commission's order. The appeal of the judgment of February 3, the main portion on the merits of the case, is on appeal in the Court of Civil Appeals and may reach this Court

at a later date. We turn now to our jurisdiction on direct appeal from Judge Roberts' order of February 12.

The jurisdiction of this Court on direct appeal is a limited one.[1] The amendment of 1940 to our constitution [2 Vernon's Ann. Const. of Texas 46] states that the Legislature shall have the power to provide for a direct appeal to this court from an order of any trial court granting or denying an interlocutory or permanent injunction *"on the grounds"* of the constitutionality or unconstitutionality of any statute or the validity or invalidity or any administrative order issued by any state agency under any statute of this State.

Pursuant to the constitutional amendment, the Legislature enacted Article 1738a authorizing a direct appeal from an order of a trial court granting or denying an injunction, as applicable here, *"on the ground of the validity or invalidity of any administrative order"* issued by any state board under any statute of this State.[2]

Our jurisdiction on direct appeal is therefore dependent upon and limited to the wording of the constitutional amendment and Article 1738a.

The Commission argues that we have no jurisdiction for two reasons:

1. Both the constitution and the statute require "an administrative order," issued under a statute, by a State agency. It contends that the real [and only] orders in litigation are those of the Commission of December 15 and 30 depriving the Gardner well of its discovery status and putting it in the common Palacios reservoir, and that the validity of these orders are presently on appeal in the Court of Civil Appeals. The Commission's position is that the letter and telegram of February 8 are not commission *orders* issued under a statute within the meaning of the constitution and Article 1738a but are simply

---

1.—Thus, this Court has held it has no jurisdiction where the administrative order was not promulgated by an administrative body having state-wide jurisdiction, Bryson v. High Plains Underground Water Con. Dist., 156 Texas 405, 297 S.W. 2d 117; where the injunction appealed from is really a mandamus rather than an injunction, Boston v. Garrison, 152 Texas 253, 256 S.W. 2d 67; and where the order appealed from is not an order of an administrative body of the State but was one from a city zoning board acting under a city ordinance, McGraw v. Teichman, 147 Texas 142, 214 S.W. 2d 282.

2.—The statute further authorized this Court to prescribe the necessary rules of procedure for such direct appeals. This the Court did in promulgating Rule 499a. Emphasis throughout this opinion is ours.

directives issued pursuant to the main orders of December 15 and 30 and the superseding of Judge Roberts' judgment of February 3. Because of our holding below, we need not decide this point.

2. Both the constitution and statute require that the granting or denial of the injunctive relief be *"on the ground* of the constitutionality or unconstitutionality of any statute of this state or [on the grounds of] the *validity or invalidity of any administrative order"* of a State board.

What is the true ground of Judge Roberts' order of February 12? Is it that Judge Roberts believed that the Commission was right and that its orders of December 15 and 30 should be kept in force pending appeal,—after he had held them void ab initio, illegal, arbitrary and capricious? Or was the ground of his order the writ of prohibition of the Court of Civil Appeals commanding him to enter it? We think it is inescapable that it was the latter. The order itself recites that Judge Roberts entered it because he "must."

There are no cases expressly construing the words "on the grounds of" in the constitution and statute. But this Court has declined jurisdiction in at least two cases in which the words have had a bearing. In *Lipscomb v. Flaherty* (1954), 153 Texas 151, 264 S.W. 2d 691, the plaintiff sought to bring a direct appeal from a judgment which he regarded as blacklisting him as a bail bondsman. He attacked the constitutionality of a statute, Article 277 Sec. 7 of the Code of Criminal Procedure. But the judgment was not based *on the ground* of the validity or invalidity of the statute *upon the ground* of the sustaining of a plea in abatement that the matter was res judicata. This Court held it had no jurisdiction.

Similarly, in Corona v. Garrison (1955), 154 Texas 124, 274 S.W. 2d 541, Corona attempted to bring a direct appeal from a judgment denying an injunction to halt proceedings by the Department of Public Safety to have him declared an habitual violator of traffic laws. This Court's opinion says, "Appellant [Corona] seeks to sustain his direct appeal here *on the ground* that he questions the constitutionality of Section 22, Article 6687b, V.A.C.S." (Emphasis added here). This Court determined, however, that the injunction was denied, not *on the ground* of the validity of the statute, but on the ground that the defendant had suffered no injuries and had an adequate remedy at law. It was held that this Court had no jurisdiction.

It clearly appears to us that the order of Judge Roberts of February 12 was not based upon the ground of the validity or invalidity of an admintsrative order issued pursuant to a statute of this State or upon the grounds of the constitutionality or unconstitutionality of a statute, but was, in fact, issued on the ground of the writ of prohibition of the Court of Civil Appeals. This Court does not, therefore, have jurisdiction. Since we are without jurisdiction of the appeal, we cannot grant the ancillary relief prayed for by Gardner incident to his direct appeal. The appeal is dismissed for want of jurisdiction.

Opinion delivered March 23, 1960.

MR. JUSTICE SMITH dissenting.

I respectfully dissent. This Court by its refusal to take cognizance of the Rules of Civil Procedure governing the trial of civil cases is enabling a private firm, the moving spirit and ally of the Railroad Commission of Texas, to change the status quo as found by the trial court, and to disrupt the orderly trial of the case in the district court. That ally-defendant is the firm of Christie, Mitchell & Mitchell, represented by an attorney of its choice. The result reached by the court enables one aggrieved party by the devious method of perfecting an appeal to the Court of Civil Appeals, instead of exercising the right of direct appeal to this court under Rule 499-a, Texas Rules of Civil Procedure, to defeat the just and legal right of the other party to the litigation to complete the trial of the issues still pending at all pertinent times in the trial court. By choice the appellees gave notice of appeal from an adverse judgment to the Court of Civil Appeals. and, on February 11, 1960. obtained from that court a writ of prohibition restraining the Honorable Jack Roberts from hearing appellant's partial motion for new trial and from hearing appellant's motion for temporary injunction pending appeal. Appellant's direct appeal to this court is not from the action of the Court of Civil Appeals in granting the writ of prohibition, but is a direct appeal from the erroneous action of the trial court in refusing to grant appellant's petition for auxiliary injunctive relief to protect its judgment of February 3, 1960, and the status quo as found by the trial court's judgment. Such action by the trial court was with no deliberate intention to deprive the appellant of his right to a full and complete trial under the Constitution and laws of Texas, but was the only honorable course for any court to pursue in view of the directive orders, even though erroneous, contained in the judgment issued by a superior court.

The sequence of events as shown by the record render it clear that the only remedy left to the appellant is by direct appeal to this court under Rule 499-a to correct the error of the court below. This court has jurisdiction. The appellant's appeal certainly is not relegated to the Court of Civil Appeals, which court, because of the erroneous assumption that in protecting its jurisdiction, it had the authority to issue a writ of prohibition. This action has completely interrupted the orderly procedure of a trial of a cause still pending at the time in the trial court. The appellees are now apparently with success using the Court of Civil Appeals' jurisdiction of their appeal as a weapon with which to deprive this court of its jurisdiction of the direct appeal authorized to appellant under Rule 499-a, supra. Appellees should not be permitted to select the forum of review of appellant's appeal from an adverse decision, especially where it is obvious it would be utterly impossible for appellant to obtain adequate relief in the Court of Civil Appeals.

The correctness of the judgment rendered by Judge Jack Roberts on February 3, 1960, is not for us to determine, but the paramount question is: Shall the appellees, acting for themselver and the firm of Christie, Mitchell & Mitchell, by the unprecedented contention that the mere giving of notice of appeal by the Commission on February 3, 1960, automatically superseded the judgment and suspended the trial?

A complete recitation of the events leading up to the final judgment by the trial court on February 12, 1960 is in order. The court omits any reference to some important phases of this case, and its recitation of the events occurring after February 3, 1960 fails to point up the significance of the result of the erroneous issuance of the writ of prohibition issued largely because of the false premise advanced by the appellees that the notice of appeal given on February 3, 1960 automatically ended the trial court's jurisdiction and transferred jurisdiction of the entire case to the Court of Civil Appeals, thereby depriving the trial court of jurisdiction to hear and grant auxiliary injunctive relief to maintain the status quo.

The trial of this case began on January 18, 1960, and on February 3, 1960 the trial court found that "the action of the Railroad Commission of Texas in merging the Bruce-Flo (Frio E-3) Field into the Palacios (Frio "E" Sand) Field, Matagorda County, Texas, and in ordering the existing field rules for the Palacios (Frio "E" Sand) Field effective in the Sand Bruce-Flo (Frio E-3) Field was null, void, and illegal, from the beginning,

and of no force and effect." The declared void order of the Commission had had the effect of cutting appellant's production materially. On February 20, 1959 (the original gas well was brought in during December 1958), appellant's well was classified by the Railroad Commission as a discovery well. It was found to be in a separate reservoir (the Bruce-Flo, Frio E-3) from other gas wells. The well was entitled to flow at 25 per cent of potential for 18 months. The flow was some four million cubic feet per day, bringing an income of approximately $800 per day. The declared void order of the Railroad Commission, issued apparently at the instance of Christi, Mitchell & Mitchell, cut appellant's production down to about 600,000 cubic feet per day and reduced appellant's income proportionately. The firm of Christi, Mitchell & Mitchell intervened in this suit alleging it had an interest in the subject matter. Therefore, it is to be assumed that the effect of the orders of December 15, 1959 and December 30, 1959, the declared void orders, which have been given new life and reinstated by merely giving notice of appeal, is to increase the income of Christie, Mitchell & Mitchell and deprive the appellant of an income based on a flow at 25 per cent of potential for 18 months.

The judgment of February 3, 1960 found the status quo to be as follows: "And, it further appearing to the Court that the status quo of the parties, *just prior to the Commission action complained of and of this time,* is one by which plaintiff was producing his gas well under and by virtue of Statewide Rules 24 and 25 [4,000,000 cubic feet], and not under and by virtue of the field rules of the Palacios (Frio "E" Sand) Field [600,000 cubic feet], and it also appearing, and the Court finding, that the Commission action seeking to apply said field rules to plaintiff's gas well, as evidenced by the instruments of December 15, 1959 and December 30, 1959 (herein more specifically described) is illegal, null and void and that a permanent injunction should issue * * *."

Pursuant to such findings, the trial court entered its judgment that the defendant-intervenor, Christie, Mitchell & Mitchell Co. take nothing by reason of its intervention, and further ordered:

"(5) The Railroad Commission of Texas, and its members, * * * defendants herein, are permanently enjoined and restrained from placing in effect and enforcing, and from attempting any action to enforce, and from keeping or maintaining in force or effect the action and orders of the Railroad Commission of

Texas heretofore taken on December 14, 1959, as evidenced by *Commission letter of December 15, 1959, and also evidenced by instrument of* December 30, 1959, captioned 'Special Order merging the Bruce-Flo (Frio E-3) Field into the Palacios (Frio "E" Sand) Field, Matagorda County, Texas'; *and these defendants are likewise permanently enjoined and restrained from taking any action whatsoever, whether by issuance of directives, proration schedules, proration orders, or allowable orders or schedules, or otherwise, which would have the effect of enforcing the described Commission action of December 14, 1959, or the described letter order of December 15, 1959, or the described instrument or order of December 30, 1959, insofar as plaintiff and his gas well in concerned; which gas well is identified as the Gardner-Lowe No. 1 Beaverson, Bruce-Flo (E-3) Field, Matagorda County, Texas, presently producing by pipe line connection with Tennessee Gas Transmission Company."* (Emphasis added.)

It should be noted that the appellant-Gardner had previously contracted to sell the 4,000,000 cubic feet production to Tennessee Gas. The decree of the Court entered on February 3, 1960, left this contract undisturbed, but the edict issued on February 8, 1960, by the Commission upon the advice of the Attorney General, and approved by the firm of Christie, Mitchell & Mitchell, in effect declared that this firm was entitled to "something" instead of "nothing", and, at the same time, ignored the judgment of the trial court entered to maintain the status quo. The judgment of February 3, 1960 discharged the appellant and the surety on the bond given by him on the granting of temporary restraining orders from further liability thereon. From the inception of the trial it was agreed that the temporary restraining order issued on January 1, 1960 was to remain in full force and effect until January 22, 1960, at 2:00 p.m., unless sooner dissolved by further order of the court. This agreement means that the temporary restraining order was to remain in effect pending the trial. The judgment entered on February 3, 1960 contained no provisions dissolving the temporary restraining order. On the contrary, the trial court no doubt assumed that the judgment would be respected without the necessity of expressly perpetuating the injunction until the rights of the parties could be determined on appeal. Incidentally, the temporary restraining order contains express provisions that appellant must make up the overproduction of gas produced in the event the court on hearing sustained the validity of the orders relied upon by the Railroad Commission and under attack in the suit brought by appellant.

As the matter stood on February 3, 1960, the appellant had obtained full relief and had no cause for the filing of a motion for new trial. However, on February 8, 1960 the Railroad Commission of Texas, acting through its Chief Gas Engineer, addressed a letter to appellant advising that "we are placing this well on the proration schedule for the Palacios (Frio "E" Sand) effective February 3, 1960. This letter was written on the advice of the Attorney General. The advice was contained in a letter addressed to the Railroad Commission advising it among other things that *"At the time of signing judgment notice of appeal was given on behalf of the Commission to the Austin Court of Civil Appeals as is shown on the judgment. The giving of notice of appeal had the effect of superseding the judgment of the District Judge. Thereupon, the restraining order having expired and no temporary injunction having been entered, the Commission was no longer under any restraint preventing enforcement of its order in question."* (Emphasis added.) Both letters were written at a time when the trial court had jurisdiction to entertain motions to grant temporary restraining orders and injunctions and to also enter motions to dissolve any temporary orders or injunctions which might have been granted. In fact, the court had jurisdiction to issue such orders as it should deem necessary to prevent a destruction of the subject matter of the controversy as well as to maintain the status quo. But, in any event, the appellant for the first time on February 8, 1960 was forced with the necessity of filing a motion for new trial to prevent the complete destruction of the judgment he had obtained just five days before. Appellant timely filed such motion setting out that *new facts* had arisen. It was alleged that the facts "show, and it is true, that the said defendants have begun a course of conduct calculated to force this plaintiff to comply with the orders and action declared by this court to be void and illegal, which course and conduct is wholly illegal and wrongful, usurps the jurisdiction of this Court, destroys the true status quo of the parties, and will result in great and irreparable harm to the plaintiff * * * ." It was alleged that the plaintiff could not sooner discover and present to the court the new evidence made the basis of the motion for a partial new trial for the reason that such facts were not in existence until February 8, 1960. The motion was presented to the court on February 8, 1960, and on that same day the court entered its ancillary temporary restraining order. The order provided that the temporary restraining order was to remain in full force and effect until 10 a.m. on the 15th day of Febuary 1960, and commanded the appellees to appear on that date and show cause why a temporary injunction should not be granted. Although

the court signed the traditional form of Temporary Restraining Order, the court contemplated that the hearing to be held on February 15, 1960 was to be one to hear the new evidence and determine whether or not its judgment of February 3, 1960 should be modified to the extent of incorporating a temporary injunction therein. For that matter, although not required, the appellees could have filed a motion for new trial. Appellant addressed a notice of his request for a hearing on his partial motion for new trial to the attorney for the Railroad Commission of Texas, and to the Attorney for Christie, Mitchell & Mitchell. In lieu of awaiting the hearing ordered to be held on February 15, 1960, the Railroad Commission on February 10, 1960, filed its motion to dissolve the temporary restraining order alleging that final judgment had previously been entered and notice of appeal had been given, and that the notice of appeal had the effect of superseding the judgment entered and of vesting exclusive jurisdiction over the subject matter and all issues in this cause in the Court of Civil Appeals at Austin, Texas. The court overruled the motion to dissolve the temporary injunction and held that it had not lost jurisdiction. This left the partial motion for new trial to be heard on February 15, 1960. The writ of prohibition issued on February 11, 1960 stopped the hearing on the motion for new trial, and forced the trial court to in effect sustain the appellees' motion to dissolve and to not hear the motion for new trial on the ground that the notice of appeal transferred jurisdiction of all matters to the Court of Civil Appeals. No authority was cited either in the letters of February 8, 1960 to the trial court or in this court supporting the contention that under such circumstances as presented by this record that the Railroad Commission can re-assume jurisdiction and by its ex parte orders and the mere giving of notice of appeal stop a court of law from proceeding with the trial of a lawsuit. The trial court expressly stated in its order overruling the motion to Dissolve the Ancillary Temporary Restraining Order of February 8th that "the Court (on February 3, 1960) had no information * * * to the effect that the Commission would attempt to re-assert jurisdiction during the appeal of the case to change the status quo of the parties * * * ."

The action of the trial court in granting the temporary restraining order and in overruling appellees' motion to dissolve such order, is indicative of the intention of the court to hear the partial motion for new trial on the date previously set and to enter judgment either denying the motion for new trial or grant the motion and enter a new judgment. In that motion for new trial, appellant asked for relief against not only the Febru-

ary 8th Commission order, but also for relief against the December 15th and December 30th orders which had been adjudicated to be void.

On February 12, 1960, the trial court in legal effect denied the injunction and refused to hear appellant's motion for new trial. This court has jurisdiction of this appeal. Article 1738a (and the Constitution) requires only that the appeal be from "An order * * * denying an interlocutory injunction * * * *on the ground* * * * of the validity * * * of any administrative order issued by any State * * * Commission." Rule 499-a requires only that the appeal *"present* * * * the validity * * * of an administrative order * * * when the same shall have arisen by reason of the order of a trial court * * * denying an interlocutory * * * injunction."

This appeal is from an order denying a temporary injunction (and denying a right to a trial upon the question of the right thereto), by virtue of which, this appeal "presents" the unconstitutionality of Article 6049c; Vernon's Annotated Civil Statutes of Texas, when construed as prohibiting the appellant any right to try out the question of a stay during appeal of the effectiveness of the administrative orders declared void in the judgment of February 3, 1960. See Rule 499a, Texas Rules of Civil Procedure.

This is a valid appeal from an order denying a temporary injunction and upholding the validity of the Commission order of February 8, 1960, entered after the jurisdiction of the courts had attached. The directive of February 8, 1960 was a Commission order. This appeal involves the fundamental question of the force and effectiveness of an administrative order adjudged by a court to be void. The Railroad Commission and Christie, Mitchell & Mitchell are still attempting to enforce the Commission's orders of December 15 and 30, 1959, both of said orders having been declared void. The question arises: Does a void order revive during appeal? Does the appeal of a judgment declaring an administrative order void authorize the Commission to issue new directives and orders to enforce such a void order? The answer is NO. The Commission has no authority to resume jurisdiction of this controversy and issue new directives attempting to place into effect an order declared void by the trial court. See Article II, Section 1, Constitution of Texas. All attempts to continue to exercise jurisdiction are void. See Stewart v. Smith et al., 126 Texas 292, 83 S.W. 2d 945; Stanolind Oil & Gas Co. v. Railroad Commission, Texas

Civ. App., 92 S.W. 2d 1057, er. ref. The appellees contend that there are ways for the appellant to obtain an injunction pending appeal. Such assertion may have been true in the cases cited, but I ask *how*, in the face of the ruling of the Court of Civil Appeals granting a writ of prohibition on the ground that the trial court had lost jurisdiction, could such relief have been obtained in the trial court?

The question of the validity, force, and effectiveness of all the orders issued by the Commission is the entire subject matter of the ancillary controversy involved in this direct appeal. The question of the validity of the orders of the Commission of December 15, 1960, December 30, 1960 and February 8, 1960 is enmeshed inseparably in this appeal, and the trial court has refused to grant a temporary injunction restraining the appellee from reassuming jurisdiction. Appellees state in their brief that they are not to "be enjoined from enjoying the fruits of supersedeas". The fruits of supersedeas in this case will be the act of taking away from appellant some 3,400,000 cubic feet of gas which under the court judgment of February 3, 1960 belongs to appellant, and delivering it or a portion thereof to Christie, Mitchell & Mitchell, all under and by virtue of the void orders involved.

Appellant is entitled to have full protection of the jurisdiction of the courts to which he has appealed from the orders of the Commission during the entire litigation. The appeal to the courts actually vacated the orders of the Commission, and the appellant is entitled to be free from further administrative action by the Commission. See City of Dallas v. Wright, 120 Texas 190, 36 S.W. 2d 973, 976; Flannery v. State, Texas Civ. App., 85 S.W. 2d 1052, er. ref.; Gulf C. & S. F. Ry. Co. v. American Sugar Refining Company, Texas Civ. App., 130 S.W. 2d 1030, er, ref.

The trial court had jurisdiction over this ancillary controversy even though the main case was appealed to the Court of Civil Appeals. This jurisdiction does not in any manner conflict with or interfere with the jurisdiction of the Court of Civil Appeals. Since this is an entirely separate controversy when considered from the standpoint of maintaining the status quo and granting a right to a stay, this court does not in any degree infringe upon the jurisdiction of the Court of Civil Appeals. The proceeding for a temporary injunction, especially when timely filed in connection with a motion for new trial, pending appeal from a judgment of an administrative order,

is a proceeding which works free of the main case. See Pacific Tel. & Tel. Co. v. Kuykendall, 265 U.S. 196, 68 L. Ed. 975, 44 Sup. Ct. 553. It follows that the writ of prohibition issued by the Court of Civil Appeals was and is of no force and effect.

Since the judgment of February 12, 1960 was erroneous, this case should be remanded to the trial court with instructions to proceed to trial upon appellant's prayer for a temporary injunction to continue in force and effect against the Commission restraining it from enforcing its orders and actions taken both before and after the judgment of February 3, 1960, and from taking any action to disturb the status quo pending a decision by the trial court.

Opinion delivered March 23, 1960.