MONTANA POWER CO. v. PUBLIC SERV-
ICE COMMISSION OF MONTANA et al.

BUTTE WATER CO. v. SAME.

HORNING et al. v. SAME.

Nos. 1506, 1513, 1514.

District Court, D. Montana.
Nov. 20, 1935.

In cases Nos. 1506 and 1513:

D. M. Kelly, John V. Dwyer, James T. Finlen, Jr., John E. Corette, and John E. Corette, Jr., all of Butte, Mont., for plaintiffs.

In case No. 1514:

Howard Toole, of Missoula, Mont., for plaintiffs.

Raymond T. Nagle, Atty. Gen., of Montana, and Albert H. Angstman, of Helena, Mont., for defendants.

Before GARRECHT, Circuit Judge, and CUSHMAN and PRAY, District Judges.

PRAY, District Judge.

The above-entitled causes are suits in equity in which complainants seek an in-

terlocutory injunction to enjoin the enforcement of orders issued by the Public Service Commission of Montana, reducing the rates and charges collected by the complainants on the sale and distribution of natural gas, water, and electricity on the ground that such reduction amounts to a taking of their property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. Temporary restraining orders, and orders to show cause why interlocutory injunctions should not be granted, were issued. The matters now before the court for consideration relate to the motions to dismiss the three bills of complaint, dissolve the temporary restraining orders, and quash the orders to show cause why interlocutory injunctions should not issue.

The questions of law involved in the three cases are the same with the exception of the one in reference to a reasonable hearing and the bias and prejudice of a commissioner as hereinafter considered. The fact situation is different in the first two respecting alleged confiscatory rates. It is also admitted that practically the same questions are involved in Horning v. Public Service Commission et al., as in the others, with some variation as to the facts. Motions to dismiss for lack of jurisdiction have been filed and submitted in all three cases, which will be taken up at this time. The issues for immediate consideration were outlined by counsel for complainants and assented to by counsel for defendants, in statements made at the hearing to the effect that they are willing to submit these motions, and if the court after consideration should entertain jurisdiction that then an interlocutory injunction may be issued on the allegations of the complaints, being admitted for that purpose only; and that if on final decision of said motions by the higher court jurisdiction is sustained, then counsel will expect to have a time set for a hearing on the merits.

The questions of principal importance are whether, in the language of the Johnson Act (48 Stat. 775) (Section 41, subd. 1 of title 28, U.S.C.A.), there exists a plain, speedy, and efficient remedy in the state district court of Montana, and whether a reasonable hearing was accorded complainant Montana Power Company, in

view of the alleged bias and prejudice of a commissioner. Complainants allege jurisdiction in this court by virtue of the provisions of section 266 of the Judicial Code (28 U.S.C.A. § 380), irrespective of the Johnson Act, which is amendatory of the first subdivision of section 24 of the Judicial Code (28 U.S.C.A. § 41 (1), and is in the following words: "Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the enforcement, operation, or execution of any order of an administrative board or commission of a State, or any rate-making body of any political subdivision thereof, or to enjoin, suspend, or restrain any action in compliance with any such order, where jurisdiction is based solely upon the ground of diversity of citizenship, or the repugnance of such order to the Constitution of the United States, where such order (1) Affects rates chargeable by a public utility, (2) does not interfere with interstate commerce, and (3) has been made after reasonable notice and hearing, and where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

Section 3906 of the Revised Codes of Montana, or so much thereof as is pertinent, reads as follows: "No injunction shall issue suspending or staying any order of the commission except upon application to the court or judge thereof, notice to the commission having been first given and hearing having been had thereon; provided, that all rates fixed by the commission shall be deemed reasonable and just, and shall remain in full force and effect until final determination by the courts having jurisdiction." This section would seem to prohibit the granting of any injunctive relief until final determination by the courts having jurisdiction; during that time the rates fixed by the commission are to be deemed reasonable and just and are to remain in full force and effect. The Montana Supreme Court has had occasion to refer to this section substantially as it reads, and without passing upon its validity, citing sections 3905, 3906 and 3911, Rev. Codes 1921, in State ex rel. Public Service Commission v. Great Northern Utilities, 86 Mont. 442, 446, 284 P. 772; Billings Utility Co. v. Pub. Serv. Com. of Mont., 62 Mont. 21, 33, 203 P. 366. That court, in passing on a statute con-

taining similar provisions (Section 3809, Rev. Codes Mont. 1921), held that it was obviously the purpose of the Legislature to restrict the power of the court to disturb or suspend the operation of an order of the board promulgating a rate or charge until final judgment, thus taking from the court all power of control over any order relating to rates and charges except by final judgment. State ex rel. Board of R. R. Com'rs v. Dist. Court et al., 53 Mont. 229, 233, 163 P. 115. The material portion of the statute (§ 3809) considered by the Supreme Court in the above case reads as follows: "Provided, that until the final decision in any such action the classification, rate, toll, charge, regulation, or order of the board affecting rates or charges shall be deemed to be final and conclusive; and provided further, that in any action, hearing, or proceeding in any court, the classification, rate, tolls, charges, regulations, and orders made, fixed, and established by said board shall prima facie be deemed to be just, reasonable, and proper." And thus it appears from the foregoing, and other authorities examined, that the Montana Supreme Court has not passed upon the constitutionality of section 3906 or other like statutes cited therein.

The only case found by counsel construing the language of the Johnson Act, of special interest to us, is that of Cary, Trustee, v. Corporation Commission of Oklahoma, 9 F.Supp. 709 (D.C.Okl. 1935). This case arose over the reduction of a gas rate by the defendant commission. Relief by injunction was sought in federal court under section 266 of the Judicial Code (28 U.S.C.A. § 380), followed by a motion to dismiss. In the state court the contention on the part of complainant was that the statute provided for legislative action by the Supreme Court, while the commission said the statute called for judicial action; the decision of the Supreme Court of that state (168 Okl. 487, 33 P.(2d) 788) was not plain. Later, a statutory 3-judge United States District Court held that the state Supreme Court had left the question in doubt as to whether it acted in a legislative or judicial capacity in respect to the rate order of the commission, and that consequently complainant had no plain remedy in the state court, and that the Johnson Act did not affect jurisdiction of the federal court. In that case jurisdiction was held to be conferred on the court last named over the question of doubt as to the remedy in the state court. In the suits before us, as contended by complainants, in all three cases, it appears that a state statute of Montana (section 3906, supra) and a judicial interpretation of a similar statute by the highest court of that state (State ex rel. Board of R. R. Com'rs v. District Court, 53 Mont. 229, 233, 163 P. 115, supra), bring the complainants within the exception noted in the Johnson Act; but it will be observed, as heretofore stated, that such interpretation of section 3906, or of other similar statutes, made no determination as to their validity or constitutionality, nor was that question raised.

On the part of complainant Montana Power Company, it is further contended that a reasonable hearing was not accorded because of the bias and prejudice of Commissioner O'Connell, one of the members of the board, in this, that he had prejudged the case long before the hearing took place, which, in effect, amounted to a denial of due process of law, by compelling this company to submit to a hearing before a commissioner who had already announced on several public occasions his opinion on the issues thereafter submitted to him as a member of the Public Service Commission of Montana. There appears to be no statute of Montana allowing the disqualification of such an officer for bias or prejudice, and no provision made for a substitute if it could be done. Irrespective of any opinion Commissioner O'Connell may have expressed against the power company, or public utility companies generally, during the heat of a bitter political contest, after it was over, and he found himself elected and had an opportunity for sober reflection upon the responsibilities of his office, and had taken an oath to discharge the duties of his office with fidelity, then, in the absence of a statute governing such a situation, the presumption is that, in a case being considered, the commission, of which O'Connell was one member, would act without bias or prejudice, and would be guided in rendering a decision solely by the evidence submitted. Complaint is also made that O'Connell exhibited his prejudice during the hearing. A disagreeable or sarcastic attitude on the part of a commissioner would not necessarily indicate that he would disregard the evidence and his oath of office and decide

the matter before him in a manner contrary to both. The Public Service Commission is the only commission or body in the state that can act in cases of this character. If it were possible to disqualify one or more commissioners for utterances made in advance of an election to membership on such a commission, then it would seem difficult to determine how such a board would ever be able to function when members were confronted with evidence of having made prejudicial remarks.

In the Mueller Case (State ex rel. Mueller v. District Court), 87 Mont. 108, 285 P. 928, 930, the Supreme Court of Montana had before it the question whether a member of a police commission could be disqualified for bias or prejudice in a hearing of charges preferred against a member of the police department. After holding this to be a special tribunal created by statute, having exclusive jurisdiction of the subject-matter and possessing quasi-judicial powers, and not limited by provisions of the Constitution which apply to courts, the Supreme Court said: "The statute makes no provision for the disqualification of members of the commission on the ground of bias or prejudice, and it must be held, in accordance with the law, that, regardless of the personal opinions of its members, this tribunal has exclusive jurisdiction of the subjects delegated to it, and its members are not vulnerable to such attack. Even with respect to judicial officers, it has been held in this state that, unless the statute provides a remedy declaring that bias or prejudice on the part of a judge shall be a disqualification, it cannot be lodged against the officer. In re Davis' Estate, 11 Mont. 1, 27 P. 342; In re Weston, 28 Mont. 207, 72 P. 512. The rule of disqualification does not apply to officers not judicial, although every case may call for the exercise of judgment and discretion. Works on Jurisdiction, 409; State v. Wells, 210 Mo. 601, 109 S.W. 758." In that case the court also cited People ex rel. Flanagan v. Board of Police Comrs., 93 N.Y. 97; People ex rel. Meyer v. Roosevelt, 23 App.Div. 514, 48 N.Y.S. 537, 540, Id., 155 N.Y. 702, 50 N.E. 1121.

When the present case was pending before the commission, it required the vote of Commissioner O'Connell to reach a decision, since it appears that one of the three, Commissioner Young, declined to vote.

The jurisdiction of this officer was exclusive, and, as before mentioned, there was no provision in the statute for a substitute. Defendants have aptly cited the rule of necessity as applicable here, and as found in 15 R.C.L. 541, as follows: "29. Doctrine of Necessity. It is well established that the rule of disqualification of judges must yield to the demands of necessity, as, for example, in cases where, if applied, it would destroy the only tribunal in which relief could be had. The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest, if no provision is made for calling another in, or where no one else can take his place, it is his duty to hear and decide, however disagreeable it may be. The rights of the other party require it. The same rule obtains in the English Courts."

Adverting again to the subject of due process of law, there seems to be no ground for serious argument that if the statute provides for a judicial review of the particular order made or agreed to by a prejudiced commissioner, then there is no denial of due process of law. Several cases are cited which appear to bear out this contention. See Davidson v. New Orleans, 96 U.S. 97, 24 L.Ed. 616; In re Valley Center Drain District, 64 Mont. 545, 211 P. 218. In the last case mentioned, it was provided by statute that a commissioner was not disqualified to act because of his ownership of land in that particular district. The objection made here was that due process of law was denied because of the self-interest of the commissioner, who became a judge in his own cause in the assessment of benefits and damages. The court held otherwise, and to the effect that a review was provided whereby the assessment of such benefits and damages might be altered; the commissioner acting only in an advisory capacity, and his decision not being final.

The statute in the instant case does not provide for a review of the rates, but defendants contend that since there exists the right of review of the commission's order due process of law is preserved, and any error based upon prejudice rather than evidence can be corrected by complainants through court proceedings had before an impartial tribunal;

so that an order having no better ground for its promulgation can be set aside in the higher court on a proper showing.

Among the many authorities presented on this subject was the case of Georgia Continental Telephone Co. v. Georgia Public Service Commission (D.C.) 8 F.Supp. 434, 436, which seems to be in point and ·well reasoned. The contention here that the commissioners were disqualified and under duress rested upon allegations that they were appointed by a Governor elected on a platform promising reduction in public utility rates; he removed their predecessors because they were inactive and appointed the present commissioners· after finding they were willing to reduce the rates. The Governor had repeatedly announced publicly that he would remove these commissioners and appoint others if they did not reduce the rates; their salaries and offices depended upon keeping the pledges they had made to the Governor. In that part, bearing upon the instant case, the court said: "Notwithstanding political platforms and administrative policies, appointees who take the oath of office must be considered to act honestly and in accordance with law and duty except as their official acts when performed prove otherwise. Courts will test these acts on their several merits, but will not investigate the politics of appointment. The financial interest alleged is too remote. It is not set up that the commissioners would lose their salaries as a direct result of a decision of this case one way or the other. But if there were a direct financial interest, since the law of Georgia does not provide for any other persons to act in such a case, the action of these commissioners would not be for that reason void. An officer, even a judicial officer, must act notwithstanding he may be interested if there is no one else who could act. 15 R.C.L. p. 541; State v. Aldridge, 212 Ala. 660, 103 So. 835, 39 A.L.R. 1470, 1476, and note. Otherwise the processes of government would cease. We do not think the Georgia commission can be held generally disqualified to pass on rates within the state. Their decision in each case must be judged on its intrinsic merits." Complainant in the Georgia Case, supra, did not allege that there was any promise by the commissioners or any demand by the Governor that the rates of this particular complainant should be reduced or· that they should

be reduced below what was fair and reasonable, and it so appears in the decision; but no special point is indicated. If a candidate for public service commissioner, either in Montana or Georgia, publicly declares throughout the state in his campaign that he is going to reduce rates of power companies, so called, it would not be difficult to determine who was probably intended, as such companies are usually well known and outstanding financial concerns; so, therefore, it is.not apparent what particular difference it would make whether the candidate named the companies outright or left the inevitable inference to be drawn from his remarks by his auditors.

But to continue our examination of the question raised in the exception contained in the Johnson amendment by referring to some of the authorities relied upon, the briefs disclose that opposing counsel have voiced opposite opinions in the interpretation of certain relevant authorities; the principal one being Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 620, 76 L.Ed. 1226. Because of such opposing views as to what the court really said in the opinion by Mr. Justice Roberts in the Porter Case, it becomes necessary to consider it. As the commissioner was about to enforce the order complained of, the company filed its bill in federal court alleging that the statute, section 4038 [as amended by Laws 1931, c. 194], did not afford interlocutory relief, and that, admitting the or-, der might be set aside by a trial in the state court, in the meantime, irreparable injury would have been done the company by revocation of the license to do business in the state, and its officers and agents rendered liable to criminal prosecution; in this connection the court said: "Such a state of the law, it is insisted, amounts to a denial of due process to which one confronted with the possible loss of property is not bound to submit, but may at once, if there be the requisite diversity of citizenship and amount in controversy, apply to a federal court for relief. Conceding the correctness of the premises, the conclusion is sound. Pacific Telephone & Tel. Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975. The appellant, however, denies the asserted statutory prohibition, and says that the plaintiff in an action attacking a decision by the commissioner may upon a proper showing obtain a stay of its operation."

The material part of section 4038, Revised Codes of Montana, 1921, as amended by Laws 1931, c. 194, which was considered in the Porter Case, is as follows: "Pending any such action [to vacate the decision], the said findings or decision of said Commissioner shall be prima facie evidence that they are just and reasonable and that the facts found are true, and pending any such action the said findings or decision of the Commissioner shall remain in full force and effect. If no action be brought to set aside said findings or decision within thirty days, the same shall become final and binding." The court defined the word "pending" as having the significance of "until," or while the time is running for the bringing of such action.

It clearly appears from this decision that section 3906 is unconstitutional in so far as it prohibits the issuance of a restraining order during the pendency of the suit. The court further held: "We are persuaded to this view for the reason that it supports the constitutionality of the act, and we are bound if fairly possible to construe the law so as to avoid the conclusion of unconstitutionality. Bratton v. Chandler, 260 U.S. 110, 43 S.Ct. 43, 67 L.Ed. 157. The construction thus adopted is consistent with the validity of the act, whereas that pressed upon us by the appellee would clearly render it unconstitutional.

▉▉▉ Where, as ancillary to the review and correction of administrative action, the state statute provides that the complaining party may have a stay until final decision, there is no deprivation of due process, although the statute in words attributes final and binding character to the initial decision of a board or commissioner. Pacific Live Stock Co. v. Lewis, 241 U.S. 440, 454, 36 S.Ct. 637, 60 L.Ed. 1084. But where either the plain provisions of the statute (Pacific Tel. & Tel. Co. v. Kuykendall, 265 U.S. 196, 203, 204, 44 S.Ct. 553, 68 L.Ed. 975) or the decisions of the state courts interpreting the act (Oklahoma Nat. Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659) preclude a supersedeas or stay until the legislative process is completed by the final action of the reviewing court, due process is not afforded, and in cases where the other requisites of federal jurisdiction exist recourse to a federal court of equity is justified." Upon rehearing of the Porter Case, 287

U.S. 346, 53 S.Ct. 132, 77 L.Ed. 354, the court adhered to its former judgment. If the Supreme Court were to write a decision for our guidance in the interpretation of section 3906, considered in connection with the Johnson Act, it could not do so more pointedly and effectually than it has done in the Porter Case, and it cites the identical state statute to which recourse could be had by complainants for a stay of the commission's order, viz., section 9243, which reads: *"Injunction order—when granted.* An injunction order may be granted in the following cases: 1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually; 2. When it shall appear by the complaint or affidavit that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the plaintiff." One of the principal reasons for the enactment of the Johnson Act was to dissuade litigants, incorporated under the laws of a state and amenable thereto, and whose rates and charges are under the control of a state Public Service Commission, from asserting their disapproval by immediately resorting to the federal courts to prevent the state body from enforcing its orders, and especially is it intended to prevent such action where an adequate remedy is plainly available in the state courts. The word "plainly" is used advisedly, since it is quite apparent from authorities cited from the highest source that such a remedy is not adequate if it is doubtful, or fraught with such difficulties as would require an action in a state court to test the validity of a state statute before it could be determined whether such remedy existed at all. There is no question that the leading cases cited by complainants furnish good law and would absolutely control here, and require the federal court to retain jurisdiction were it not for the subsequent Johnson amendment which considerably narrowed the boundary line of its jurisdiction, and the case of Porter v. Investors' Syndicate. It cannot be successfully denied that the Supreme Court has on different like occasions held that where a utility company is not given the right to apply for an injunction in the state court, in

a proper case, to prevent the operation of rates or charges, alleged to be confiscatory, and where immediate substantial and irreparable loss would result during an appeal, that constitutional rights are infringed and a federal court will grant injunctive relief. Many cases cited amply sustain the position taken by complainants in that respect, such as Pacific Tel. & Tel. Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975; Oklahoma Natural Gas Co. v. Russell and Corp. Commission of Okla., 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; Prendergast & Pub. Serv. Comm. of N. Y. v. N. Y. Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853; N. W. Bell Tel. Co. v. Spillman (D.C.) 6 F.(2d) 663, 664; Pacific Tel. & Tel. Co. v. Cushman, 292 F. 930 (C.C.A.9) pet. for cert. dismissed, 263 U.S. 729, 44 S.Ct. 181, 68 L.Ed. 529; Central Ky. Nat. Gas Co. v. Rd. Comm. of Ky., 290 U.S. 264, 54 S.Ct. 154, 78 L.Ed. 307.

■ But it will have to be conceded that the Porter Case holds that such a statute as section 3906 is clearly in violation of the Federal Constitution. It will be observed in the Kuykendall Case, supra, that the United States Supreme Court held that a litigant whose constitutional rights are being invaded, and to whom a statute denies a supersedeas in the state court, may properly base his application for equitable relief on the effect of the statute and the presumption of its validity, and is not required to establish that the state statute is not valid under the State Constitution. In that case the issue was over a conflict of the statute with the State Constitution. But that is no authority to guide us in this case; here no presumption of validity can be indulged in, in the face of the Porter decision, and besides, no action is required here to determine whether the state statute is invalid under the State Constitution. Here it has been held that the section of the state statute now being considered is violative of the provisions of the Constitution of the United States, and in such a situation it is plainly indicated in the case last cited that sections 9243 et seq., Revised Codes of Montana, 1921, would permit the court to grant a stay upon a proper showing. The language of the opinion in the Porter Case in considering that proposition in section 4038, of the above state statutes, is as follows: "The first clause would obvious-

ly permit the issuance of an interlocutory injunction upon a proper showing, especially in view of the provisions of the Code of Civil Procedure." This was said following the interpretation of the word "pending" and defining it as meaning "until." Now does this view of the case point the way to a plain, speedy, and efficient remedy? It seems to the court that all the complainants would have to do would be to commence their suits in the state court and make a showing for injunctive relief, citing the provisions of the Porter Case; and that such relief would have to be granted, if they were found to be entitled to it. And, furthermore, it is of interest to note here that Judge Angstman, counsel for the commission, both in his oral arguments and in his briefs, which are also signed by the Attorney General, has conceded that an injunction may be issued during the pendency of such suits in the state court, on a proper showing, on the authority of the Porter Case and the general statute, and that he could not oppose such an interpretation of the law as it now stands and as applied to section 3906; that the other provisions of the state statute would apply; and that the state court would have to treat the unconstitutional provisions of section 3906, respecting the denial of injunctive process, as if they were not written therein, and as wholly void and of no effect. Ex parte La Prade, 289 U.S. 444–458, 53 S.Ct. 682, 77 L.Ed. 1311. The court is fully convinced that no difficulty could be encountered by complainants in the state court in following the line of procedure indicated herein; they might not be granted a restraining order against the commission; that, of course, would depend upon their evidence, but they would assuredly have the right under the law, as it now stands, and has been declared to be by the Supreme Court of the United States, to apply for such relief.

■ Certain questions involved in the Montana Power case are not raised in the Horning and Butte Water Company cases; no question in the latter two as to being deprived of a reasonable hearing by the Public Service Commission; and counsel seem to be in agreement here that it is not necessary to apply for a rehearing before commencing suit. In addition to the question common to all in the above-entitled causes, as to a plain, speedy, and efficient remedy, in the Horning case,

defendants also contend that there is not involved in this controversy the sum or value of $3,000, exclusive of interest or costs. Counsel also seem to be in agreement in all cases that the remedy provided by section 3906, in the state court, is a judicial and not a legislative remedy, which the court accepts as a self-evident fact from the plain language of the statute itself. As to the lack of the sum or value required in the Horning case to confer jurisdiction, that question seems to be settled by the allegations of the complaint itself considered with the motion to dismiss, and therefore is not deemed of sufficient importance to merit further discussion. The contention that application should be made to the commission by the Montana Power Company for a rehearing or modification of its order before commencing suit seems untenable in view of the weight of authority cited· to the contrary. In Prendergast & Public Service Comm. of N. Y. v. N. Y. Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 469, 67 L.Ed. 853, it was held that it was not necessary to apply for a rehearing before resorting to the court, and it was further added: "And for like reasons, it was not necessary that the Company should have exercised the privilege granted by one of the orders of applying to the Commission for modification of the classification." Also the claim that complainant Montana Power Company did not have a reasonable hearing because of the bias and prejudice of one of the commissioners has been disposed of.

In Porter v. Investors' Syndicate, we have a decision which was intended primarily for the enlightenment of both federal and state courts in Montana, and is a plain direction to hold such a law as we have been considering in section 3906, denying a supersedeas or stay, unconstitutional and void, as violative of the provisions of the Constitution of the United States, for the reason that it would permit the taking of the property of the complainants without due process of law, which is contrary to the Fourteenth Amendment.

Wherefore, this court concludes that it is wholly without jurisdiction to hear and determine the above-entitled causes. Since considering the issues herein and agreeing to the foregoing opinion, in which all three judges concurred, the plaintiffs

Montana Power Company and Butte Water Company have come to an understanding with the Public Service Commission of Montana for an adjustment of the rates in controversy, and have filed herein a stipulation and motion for the dismissal of the causes of the above-named plaintiffs, and have submitted a form of order of dismissal, which all members of the court have examined and approved.

Now, therefore, according to agreement as expressed in the foregoing stipulations of counsel for the respective parties, the motions to dismiss aforesaid, based upon said stipulations, are hereby granted. As to the suit of Fred A. Horning, No. 1514, the motion of the defendants to dismiss is also granted.

All concur.